Samuel W. Eager, J.
This is a proceeding authorized by section 298 of article 15 of the Executive Law, which article is known as the “ Law Against Discrimination.” The proceeding is instituted in this court by the New York State Commission Against Discrimination to enforce its order directed against alleged discriminatory practices of respondents with respect to leasing of apartments in alleged publicly assisted housing accommodations. The respondent, Pelham Hall Apartments, Inc., hereinafter referred to as “ Pelham ”, is the owner of the housing accommodations in question, to wit, a multiple apartment dwelling known as and hereinafter referred to as “ Rochelle Arms ’ ’, situate at New Rochelle, New York. Said respondent is a privately owned stock corporation. The individual respondents are officers of the corporation and have acted as its manag *337 ing agents in the matter of the leasing of accommodations therein.
It appears that, pursuant to section 297 of said article 15, one Norris G. Shervington, a Negro, did duly make and file a verified complaint with the commission charging that the respondents, because of his color, refused to lease him an apartment in Rochelle Arms. The discrimination against Shervington because of his race and color was admitted by the respondents. Generally stated, however, their position was, first, that the apartment building, Rochelle Arms, was not ‘ ‘ publicly-assisted housing accommodations ” subject to the provisions of the statutes providing against discrimination in leasing of such housing accommodations; and, second, that, in any event, the constitutional rights of the respondents are violated by the application of the provisions of such statutes as against them and their apartment building. The commission, proceeding on the assumption that the statutory provisions were valid and without passing on the constitutional questions, held the provisions applicable to Rochelle Arms and the acts of respondents. Thereupon, the commission, on July 18,1957, pursuant to section 297 of the Executive Law, rendered the cease and desist order sought to be enforced in this proceeding.
Now, the Court of Appeals in Dorsey v. Stuyvesant Town Corp. (299 N. Y. 512) held that the equal protection clauses of the Federal and State Constitutions could not be successfully invoked to protect a prospective tenant against racial discrimination with respect to tenancy in a privately owned apartment building, and that the mere fact that a private builder or owner had received governmental assistance in connection with an apartment building project would not render applicable those clauses to bar racial discrimination in the renting of apartments in the building. The court further held that generally speaking the opportunity to acquire a tenancy in privately owned real property was not a civil right and that, therefore, under the law then existing, the private owner of an apartment building, whether or not erected or financed with governmental assistance, would not be in violation of the civil rights clause (art. I, § 11) of the State Constitution in refusing rental of an apartment therein for racial reasons.
The Court of Appeals, in the Dorsey case (supra), however, pointed out that the ‘ ‘ civil rights ” referred to in the civil rights clause in section 11 of article I of the State Constitution are “ those elsewhere declared ” (p. 531). It referred to the statement of the chairman of the Bill of Rights Committee at the Constitutional Convention of 1938 (p. 531) “ to the effect that *338 the provision in question was not self-executing and that it was implicit that it required legislative implementation to be effective (2 Rev. Record of N. Y. State Constitutional Convention, 1938, p. 1144) ”. Accordingly, the court held that the constitutional provision did not itself apply to prohibit racial discrimination in housing. The court, furthermore, in the opinion concurred in by the majority, gave indication that it felt that the matter of protection against racial discrimination was a proper function for State law and that the State had the power to enact legislation providing against such discrimination in new areas such as in the case of publicly assisted housing accommodations.
The court declared (p. 534): “ That high responsibility of the States, implicit in our Federal system, indicates that the political processes must furnish the appropriate means for extension of those rights in areas wherein they have not been heretofore asserted.”
In 1950, the year following the decision in the Dorsey case (supra), the Legislature, declaring itself as acting in the “ exercise of the police power of the state for the protection of the welfare, health and peace of the people of this state and the fulfillment and enforcement, of the provisions of the constitution of this state concerning civil rights ”, enacted article 2-A of the Civil Rights Law to specifically provide against the practice of discrimination in publicly assisted housing accommodations. By amendment in 1955 to section 18-b of the Civil Rights Law, effective July 1, 1955, included within ‘ ‘ publicly assisted housing accommodation ’ ’, to which said article 2-A was made applicable, was housing which is located in a multiple dwelling, ‘ ‘ the acquisition, construction, rehabilitation, repair or maintenance of which is, after. July first, nineteen hundred fifty-five, financed in whole or in part by a loan, whether or not secured by a mortgage, the repayment of which is guaranteed or insured by the federal government or any agency thereof, or the state or any of its political subdivisions or any agency thereof, provided that such a housing accommodation shall be deemed to be publicly assisted only during the life of such loan and such guaranty or insurance ”.
By virtue of the said 1955 amendment to said section 18-b of the Civil Rights Law, discrimination in housing accommodations because of race, color, religion or national origin is now prohibited in multiple dwellings of the type and style of Rochelle Arms which, after July 1, 1955, received the benefit of FHA or other publicly assisted financing. There was a further amendment to said section 18-b in 1956 having to do with the definition *339 of a multiple dwelling covered by the law, but such amendment is of no consequence to the questions here, inasmuch as Rochelle Arms was of the type and nature of a multiple dwelling included within the 1955 law as well as the 1956 law.
In 1956, effective July 1, 1956, the Legislature also amended article 15 of the Executive Law to bring within the coverage and remedial procedures of said article the same “ publicly-assisted housing accommodations ” as were covered by the Civil Rights Law provisions as amended.
Under the provisions of the Civil Rights Law, a person aggrieved by the unlawful discrimination in housing accommodations would be obliged to proceed on his own in a court of competent jurisdiction to recover his damages or to obtain other appropriate relief. By virtue of the 1956 amendment to article 15 of the Executive Law, bringing the same housing accommodations within the coverage of said article, a person aggrieved may file his complaint with the commission and have the benefit of certain administrative procedures by and through the commission.
The commission argues that by the virtue of the enactment of article 2-A of the Civil Rights Law, the Legislature has, in effect, provided that the opportunity to acquire a tenancy in publicly assisted housing accommodations is now a civil right within the ambit of constitutional protection, and that the provisions of this article and of said article 15 of the Executive Law expressly apply to prohibit the discriminatory practices which the respondents exercised against Shervington in denying him the rental of an apartment in Rochelle Arms.
Now, indisputedly, Rochelle Arms was a multiple dwelling housing project financed by means of a Federal Housing Administration insured mortgage loan. The respondents point out that the original FHA commitment for a loan in the sum of $1,676,000 for the carrying out of the project was issued on June 30, 1955, which is one day prior to the effective date of the afore-mentioned amendment to article 2-A of the Civil Rights Law. Notwithstanding this fact, it is readily concluded that the building falls within the statutory definition of “publicly assisted housing accommodations ” subject to the anti-discrimination provisions of said article and of article 15 of the Executive Law. The test for inclusion is whether or not the “ acquisition, construction, rehabilitation, repair or maintenance ’ ’ of the multiple dwelling was, after July 1, 1955, ‘' financed in whole or in part by a loan, * * * the repayment of which is guaranteed by the federal government or any agency thereof ”.
*340 The FHA commitment, in this case prior to July 1, 1955, was in effect merely a commitment to insure the loan when and if made and provided all conditions mentioned in the commitment were complied with. The project became “ financed in whole or in part ”, following the commitment, upon the making and use in the project of advances on account of the insured loan. Here, it appears that the construction work upon the project was not started until some time after July 1, 1955; that the building loan agreement for making of the loan by Lincoln Savings Bank of Brooklyn, as the lender, and the mortgage note securing the loan, wore not executed until November 18, 1955; and that the advances to the mortgagor, Pelham, on account of the FHA insured loan were made and received in installments after November 18,1955. It further appears that an additional FHA insured loan was requested by Pelham and that on May 8, 1957 the Lincoln Savings Bank, as lender, made a supplemental application to the Federal Housing Commissioner to cover a “ Supplementary Mortgage ” loan in the sum of $209,500. On June 3, 1957 the Federal Housing Commissioner issued a commitment covering the additional loan, and on June 6, 1957 Pelham executed a mortgage note to the Lincoln Saving’s Bank to cover the same. This amount was thereafter advanced by the bank to Pelham. Clearly, under the circumstances, there can be no question whatever but that Rochelle Arms is a multiple dwelling which was, after July 1, 1955, financed in whole or in part by an FHA insured loan. Therefore, it comes fully within the coverage of the provisions of article 2-A of the Civil Rights Law and article 15 of the Executive Law.
On the constitutional issue, the respondents speak generally of the alleged inherent and vested rights appertaining to constitutionally protected private ownership of property. They argue that the private owner of property has the fundamental right to choose whether or not he will sell or rent the same or a portion thereof, and to whom he will sell or rent; and further, that legislation tending to abridge this right is a step toward the State control of private property and is contrary to our accepted political beliefs. True, ‘ ‘ the right of private property is a fundamental, natural, inherent, and inalienable right * * * guaranteed by the federal and various state constitutions.” (16 C. J. S., Constitutional Law, § 209, pp. 1048-1049.) Constitutional safeguards against the infringement upon the rights of the owner of private property are found in Amendments V and XIV of the United States Constitution and the New York Constitution (art, I, §§ 6, 7,10,11),
*341 The private ownership of private property, free of unreasonable restriction upon the control thereof, is truly a part of our way of life, but, on the other hand, we, as a People do hold firmly to the philosophy that all men are created equal. Indeed, discrimination against any individual here on account of race, color or religion is antagonistic to fundamental tenets of our form of government and of the God in whom we place our trust.
Involved here, it is said, is an apparent collision of rights, namely, a clash between the right on the one hand of the private owner of property to enjoy and use it in the manner most desirable and/or profitable to him, and the right on the other hand of all individuals here to be treated equally and free of all discrimination on account of race, color or religion.
In the final analysis, however, what is here involved is a conflict between the rights of the private property owner and the inherent power of the State to regulate the use and enjoyment of private property in the interest of public welfare; and, as hereinafter noted, the power of the State, when reasonably / exercised, is supreme.
Clearly, legislation, such as article 2-A of the Civil Eights Law, operating to broaden the “ civil rights ” of an individual to include the right of housing in certain classes of housing accommodations may be justified only in the exercise of the police power, that is, as to privately owned housing accommodations. In fact the Legislature, in enacting article 2-A, declared that, as stated above, the ‘ ‘ article shall be deemed an exercise of the police power of the state for the protection of the welfare, health and peace of the people of this state and the fulfillment and enforcement of the provisions of the constitution of this state concerning civil rights.”
Now, it is firmly settled that private property rights are subject to the exercise of police power legislation (Adamec v. Post, 273 N. Y. 250; People ex rel. Durham, Realty Corp. v. La Fetra, 230 N. Y. 429) and, thus, the matter of the rental of private real property, and the rights of the owner with respect thereto, are subject to legislative regulation enacted in the interests of the public welfare. (Cf. Block v. Hirsh, 256 U. S. 135; Levy Leasing Co. v. Siegel, 258 U. S. 242, 246; Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413; People ex rel. Durham Realty Corp. v. La Fetra, supra.) The policy, wisdom and expediency of police power legislation affecting private property rights, such as the legislative acts under attack here, are for the Legislature and Governor. Broad discretion resides in the Legislature, comprised of elected representatives of the People, to decide *342 what is necessary in the interests • of the public good. (16 C. J. S., Constitutional Law, § 198 and cases cited.) The court has no super-legislative powers and a legislative act may not be annulled by a court merely because it doubts the wisdom thereof. (16 C. J. S., Constitutional Law, § 198; Lincoln Bldg. Associates v. Barr, supra.)
These particular legislative acts directed against the practice of racial or religious discrimination are presumed constitutional (Lincoln Bldg. Associates v. Barr, supra; Matter of Fay, 291 N. Y. 198, 206, 207), and are to be stricken down by the courts only if it appears that they are clearly arbitrary, discriminatory and without any reasonable basis. Where reasonableness of legislation, such as this is fairly debatable, the court may not question the legislative discretion in adopting it (Lincoln Bldg. Associates v. Barr, supra) and these particular acts are not to be declared unconstitutional merely because they may tend to cut down the property rights of certain private property owners and may result in some financial loss to the0m without provision for compensation therefor. (Block v. Hirsh, 256 U. S. 135, 155, supra; 16 C. J. S., Constitutional Law, § 209, pp. 1054-1058. Cf. Matter of Wulfsohn v. Burden, 241 N. Y. 288.) The legislation may be sustained as against an attack by an aggrieved property owner unless it appears that the enforcement thereof amounts to confiscation, that is, operates to preclude the use of his property for any purpose to which it is reasonably adapted (cf. Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 226; Matter of Wulfsohn v. Burden, supra), the pecuniary profits of the individual being secondary to the public welfare. (Cf. Matter of Wulfsohn v. Burden, supra; Palmer v. Furman, 283 App. Div. 664.)
In view of the foregoing, I am satisfied that the Legislature did act within the bounds of the police power in enacting provisions against racial and religious discrimination in publicly assisted housing accommodations. The specific contentions of respondents addressed to the equal protection clauses of the State and Federal Constitutions are not, however, to be overlooked without discussion. They contend that the provisions against the practice of discrimination in. the specified classes of housing accommodations are in violation of such clauses because applicable solely to multiple dwellings, the financing of which is publicly assisted, rather than generally to all such dwellings whether or not so assisted; and that, in any event, the law is unreasonably discriminatory in that its application is confined to the dwellings so publicly assisted after July 1, 1955. *343 Of course, it is settled that the prohibition against the denial of equal protection of laws does not preclude a State from resorting to classification for purposes of legislation. (Matter of Merchants Refrig. Co. v. Taylor, 275 N. Y. 113.) It is said that “ (t)he prohibition of the Equal Protection Clause goes no further than the invidious discrimination. ” (Williamson v. Lee Optical Co., 348 U. S. 483, 489.)
In passing upon the validity of legislation claimed to offend against the equal protection clauses because operating solely with respect to particular classes of persons or property, the test is whether or not the classification rests upon some reasonable basis bearing in mind the subject matter and the object of the legislation. (Morey v. Doud, 354 U. S. 457; Matter of Merchants Refrig. Co. v. Taylor, supra.) “ A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality”, and, “ (w)hen the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.” (Morey v. Doud, supra, pp. 463-464.)
In determining whether or not there was reasonable basis for establishing the specified classes of housing accommodations to which the provisions of the Civil Bights Law and the Executive Law were made applicable, the court may take into consideration the fact that civil rights and anti-discrimination legislation in this State, and on the Federal basis for that matter, has been and is a step by step proposition. It is noted that the Legislature, in its effort to effect a proposed reform deemed advisable from the standpoint of the public welfare " ‘ may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind ” (Williamson v. Lee Optical Co., supra, p. 489). The Legislature may from time to time broaden regulation in the interest of the public welfare to the extent deemed necessary or beneficial by reason of changing living and economic conditions. (Cf. People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, supra', Matter of Wulfsohn v. Burden, 241 N. Y. 288, supra.) A proceeding step by step by legislative bodies to eliminate the practice of racial discrimination in affairs closely connected with the lives of our citizens is not only a reasonable, but in view of changing times and circumstances, a required method of procedure in the interest of public welfare. The Legislature was authorized to proceed as it did in imposing a ban against discrimination in hous *344 ing, that is, by gradual steps, beginning with provisions applicable to various classes of publicly owned and managed housing and over a period of time extending the provisions to specified classes of private housing projects inaugurated or carried out with governmental assistance. Proceeding in such manner required classification in. the legislation enacted from time to time; and, under the circumstances, reasonable classification was justified. It is concluded that the classification in the particular 1955 and 1956 amendments to the Civil Bights Law and the Executive Law having to do with publicly assisted housing accommodations is not so arbitrary and unreasonable as to be in violation of the equal protection clauses.
Beadily overruled are respondents’ contentions that the particular statutory amendments are invalid because they are made applicable only to housing accommodations receiving publicly insured financing after July 1, 1955. The particular provisions were enacted into the law by the 1955 Legislature prior to the July 1 date, and were declared effective as to such date. (Civil Bights Law, § 18, subd. [e].) Thus, the regulations were in effect prospective in operation. It is clear that a regulation is not necessarily rendered invalid because, incidental to its prospective operation, it is written to apply only to persons or property coming within a particular category or class for the first time on or after the effective date. The constitutional provisions do ‘ ‘ not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.” (Sperry & Hutchinson Co. v. Rhodes, 220 U. S. 502, 505; Williams v. Walsh, 222 U. S. 415; People v. Griswold, 213 N. Y. 92. Cf. Matter of Stracquadanio v. Department of Health, 285 N. Y. 93.)
Finally, there is clearly no sound reasoning behind the respondents’ argument that the 1956 amendment to article 15 of the Executive Law, effective as of July 1, 1956, is invalid because made retroactive as to housing accommodations financed by public assistance from the 1st day of July, 1955. As heretofore pointed out, the amendment to article 2-A of the Civil Bights Law, enacted in 1955 (see L. 1955, ch. 341), prohibited and barred as unlawful the discrimination practiced by the respondents in connection with Rochelle Arms. This amendment became law on approval by the Governor on April 15,1955, and was prospective in operation, namely, becoming effective on July 1, 1955. How, so far as these respondents are concerned, all the 1956 amendment to the Executive Law did was to provide another remedy for an aggrieved person against the discrimina *345 tion then already prohibited, namely, the remedy of proceeding by complaint to the Commission Against Discrimination and the proceeding thereon by the commission.
In conclusion, it is clear that the advisability and wisdom of the statutory provisions against practice of discrimination in publicly assisted housing accommodations were legislative problems and that adherence by this court to the holdings of the United States Supreme Court and our Court of Appeals, as indicated above, requires the determination that these provisions are valid and constitutional. In fact, it appears that such legislation was given in advance the stamp of approval by the decision of the Court of Appeals in the Dorsey case (supra). The State had the right to leave abstention from racial or religious discrimination in such housing accommodations to the conscience of the individuals. On the other hand, it had the right “ to put its authority behind one of the cherished aims of American feeling by forbidding indulgence in racial or religious prejudice ” in such accommodations. (Cf. Railway Mail Assn. v. Corsi, 326 U. S. 88, 93, 98.) The Legislature having acted within the limits of its power, the laws are valid.
The objections on the part of respondents to certain provisions of the commission’s order sought to be enforced are overruled. The commission has a broad discretion with respect to the rendering of an order deemed adequate and necessary to secure full compliance with the provisions of the law, including provisions for such record keeping and reports by respondents as are reasonably necessary to enable the commission to see to it that the law is being complied with. It does not appear that the provisions of the order objected to are arbitrary or unreasonable, and, this being so, the court should not change or redraft the same. It is noted that the record keeping provisions of the order are only to be effective for one year, and they are not deemed unduly burdensome. The right will be reserved to the respondents to apply at any time at the foot of the order hereon for relief in the event of a dispute over the form and contents of any notice required in advertisements, etc., that Pelham is subject to the Law Against Discrimination.
The application of the commission to enforce its order as against the respondents is in all respects granted. Settle order on notice.