LEVITT AND SONS, INCORPORATED, A NEW YORK COR-
PORATION, AND WILLIAM J. LEVITT, PLAINTIFFS-
APPELLANTS, v. DIVISION AGAINST DISCRIMINATION
IN THE STATE DEPARTMENT OF EDUCATION, WILLIE
R. JAMES AND FRANKLIN D. TODD, DEFENDANTS-
RESPONDENTS.

GREEN FIELDS FARM, INC., A NEW JERSEY CORPORA-
TION, AND ROBERT A. BUDD AND HORACE B. PETERS,
PLAINTIFFS-APPELLANTS, v. DIVISION AGAINST DIS-
CRIMINATION IN THE STATE DEPARTMENT OF EDU-
CATION AND YUTHER GARDNER, DEFENDANTS-RE-
SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 20, 1959—Decided July 22, 1959.

544

Before Judges PRICE, SULLIVAN and FOLEY.

*Mr. Sidney S. Jaffe* argued the cause for plaintiffs-appellants Levitt and Sons, Inc., William J. Levitt, Green Fields Farm, Inc., Robert A. Budd and Horace B. Peters (*Mr. Samuel Wolfson*, attorney for Levitt and Sons, Inc. and William J. Levitt; *Mr. Sidney S. Jaffe*, of counsel; *Mr. Sidney S. Jaffe*, attorney for Green Fields Farm, Inc., Robert A. Budd and Horace B. Peters).

*Mr. Julius Wildstein* argued the cause for defendants-respondents Yuther Gardner, Franklin D. Todd and Willie R. James (*Mr. Herbert H. Tate* and *Mr. Jerome C. Eisen-*

*berg,* attorneys for defendant-respondent, Franklin D. Todd; Messrs. *Kapelsohn, Lerner, Leuchter & Reitman* and Mr. *Emerson L. Darnell,* attorneys for defendant-respondent Willie R. James; Mr. *Julius Wildstein,* attorney for Yuther Gardner).

Mr. *Thomas P. Cook,* Deputy Attorney General, argued the cause for defendant-respondent Division Against Discrimination (Mr. *David D. Furman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

PRICE, S. J. A. D. The basic issue raised by these appeals is whether or not the corporate plaintiffs, Levitt and Sons, Incorporated (Levitt) and Green Fields Farm, Inc. (Green), real estate developers of "Levittown" and of an area of "Green Fields Village," respectively, are, in the operation of those developments, subject to the provisions of the "Law Against Discrimination" (*N. J. S. A.* 18:25–1 *et seq.*) which it was charged they violated. The charges of discrimination were made in amended complaints filed by respondents James, Todd and Gardner in the Department of Education of the State of New Jersey, Division Against Discrimination. It was claimed in the Levitt case that appellants refused to sell houses to defendants James and Todd because of their race and in the Green case a similar accusation was made as to defendant Gardner. Defendants James, Todd and Gardner are negroes.

In each of the above cases plaintiffs instituted an action in lieu of prerogative writ in the Superior Court, Law Division. In those actions plaintiffs, challenging the asserted jurisdiction of the Division Against Discrimination, contended, *inter alia,* that (1) allegations in the amended complaints in the Division that they had violated *N. J. S. A.* 18:25–9.1 were without foundation in that they were not charged with any substantive acts of discrimination which might properly form the basis of complaints before the

administrative agency; (2) the defendant Division was without statutory authority with reference to any housing other than public or *quasi*-public housing constructed in accordance with certain enumerated statutory enactments unrelated to plaintiffs' housing developments; (3) the 1957 amendment to the Law Against Discrimination (*L.* 1957, *c.* 66, *p.* 128), assertedly construed by the Division as conferring jurisdiction upon it to deal with plaintiffs' housing developments, is unconstitutional; and (4) the cause of action against the individual plaintiffs is barred by the limitation contained in the Law Against Discrimination.

On plaintiffs' applications the court issued orders staying proceedings in the Division Against Discrimination and directing defendants to show cause why the restraints should not be continued until after the disposition of the court actions. Thereafter the court, on defendants' motions, dismissed the complaints and dissolved the aforesaid restraints. Its action was based on its determination that it was without jurisdiction over the subject matter of the action, which jurisdiction it considered was vested in the Appellate Division, to be exercised as provided in *R. R.* 4:88–8(*b*), and because "plaintiffs have failed to exhaust their administrative remedies" before the Division. Orders reflecting the court action were entered February 19, 1959.

Following plaintiffs' appeals to this court from said orders, and on motions by plaintiffs for orders staying the performance and enforcement of the aforesaid orders of the trial court and staying further proceedings in the Division, we entered the following order in the *Levitt* case and a comparable order in the *Green* case:

"The Court, on its own motion, having decided to consider the within appeal also as a request by plaintiffs-appellants for leave to appeal to this Court from the setting down for hearing by defendant-respondent, Division Against Discrimination in the State Department of Education, before it the matter of the amended complaints filed by said defendants-respondents, Willie R. James and Franklin D. Todd, in the proceedings aforesaid, with leave granted for such appeal, so that the merits of the complaint filed by these

plaintiffs-appellants in the Law Division of the Superior Court may be determined by this Court in this appeal;

It is, on this 10th day of March, 1959, Ordered:

1. The performance and enforcement of the said order entered in the Law Division of the Superior Court and the proceedings before defendant-respondent, Division Against Discrimination in the State Department of Education, be and the same are hereby stayed pending a determination and disposition of this appeal."

Each of the aforesaid developments, in which plaintiffs are respectively engaged, involves the construction of one-family houses. The record reveals that it is planned that the Levittown development will, over a period of five to seven years, involve the construction of approximately 16,000 houses. The Green Fields Village development is divided into three parts on two of which 506 houses have been constructed and on the third of which plaintiff Green has erected 52 houses, of which "eight or nine" remained unsold at the time plaintiff Budd, president of Green, gave his deposition on December 22, 1958.

The record presented to us shows that the Federal Housing Administration (FHA) agreed by written "conditional commitments" to insure mortgages made by purchasers of Levittown houses to an approved lending institution. FHA issued at least 1089 such commitments. Similar arrangements were made with reference to the Green Fields Village properties, with additional undertaking by FHA that with reference to any house in the development it would insure the mortgage if the builder became the mortgagor. These commitments on the part of FHA, issued in large numbers, were called "firm commitments with additional provisions" or "operative-builder firm commitments." The evidence showed that an operative-builder firm commitment, although similar in form to a conditional commitment, covers a situation in which if the developer (operative-builder) is unsuccessful in marketing a completed house, the FHA "agrees to insure a mortgage where the operative-builder is the mortgagor * * *." However, according to deposition by Michael Albert, Director of the South Jersey District of FHA, the

FHA "has not endorsed for insurance any mortgages in the name of the operative builder, that is Green Fields Farm, Inc." The procedure followed was outlined by him. Prior to the issuance of FHA mortgage commitments initial application for site approval has to be made by the "operative builder in order to determine eligibility of the site." When the site is found to be "generally acceptable" to FHA it issues a "subdivision report" designating its "requirements concerning drainage, street layouts, parks, curbs, sidewalks, utilities, including water and sewage disposal, and on site improvements including top soil, streets, trees, driveways, entrance walks, finish grade, etc."; thereafter the builder "will arrange with an FHA Approved Mortgagee to submit individual applications for commitments to FHA." These applications are processed by the Architectural, Valuation and Mortgage Credit Sections and the Chief Underwriter's Office. Thereafter commitments are normally issued to the approved mortgagee with reference to the respective properties. Following the issuance of the conditional commitment or operative builder firm commitment the builder starts construction during the course of which FHA construction inspectors make periodic inspections. Mr. Albert testified that because of the large size of Levittown a full time FHA inspector was at the development to make inspections on the basis of schedules furnished by the builder.

"As the builder markets his houses, an application for each prospective home buyer is prepared and submitted to FHA by the Approved Mortgagee." On satisfactory credit report an "Individual Firm Commitment in the name of the applicant is issued to the Approved Mortgagee." After title closing the "Approved Mortgagee submits to the FHA" the copies of the bond and mortgage and the executed commitments, following review of which "the original bond is endorsed by FHA for mortgage insurance and returned to the mortgagee."

The record also shows that Mr. Albert testified that the FHA mortgages are available for approved loans at a rate

of 5¼% and for periods up to 30 years, in contrast with a 5½% rate and a maximum of 20 to 25 years offered by conventional financing; that the prospective purchaser in a development such as that of plaintiffs is advised of the availability of FHA financing and furnished with a pamphlet containing information referable thereto.

The pertinent provisions of the "Law Against Discrimination" are as follows:

*N. J. S. A.* "18:25–4. Employment and accommodations without discrimination; civil right

All persons shall have the opportunity to obtain employment, to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation and publicly assisted housing accommodation, without discrimination because of race, creed, color, national origin or ancestry, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right." (Effective June 4, 1957)

*N. J. S. A.* "18:25–5. Definitions

As used in this act, unless a different meaning clearly appears from the context:

＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

d. 'Unlawful employment practice' and 'unlawful discrimination' includes only those unlawful practices and acts specified in section 11 of this act. [*N. J. S. A.* 18:25–12]

＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

k. 'A publicly assisted housing accommodation' shall include all housing built with public funds or public assistance pursuant to chapter 300 of the laws of 1949, chapter 213 of the laws of 1941, chapter 169 of the laws of 1944, chapter 303 of the laws of 1949, chapter 19 of the laws of 1938, chapter 20 of the laws of 1938, chapter 52 of the laws of 1946, and chapter 184 of the laws of 1949, and all housing financed in whole or in part by a loan, whether or not secured by a mortgage, the repayment of which is guaranteed or insured by the Federal Government or any agency thereof."

*N. J. S. A.* "18:25–6. Division against Discrimination in State Department of Education created; powers

There is created in the State Department of Education a division to be known as 'The Division Against Discrimination' with power to prevent and eliminate discrimination in employment against persons because of race, creed, color, national origin or ancestry or because of their liability for service in the armed forces of the United States, by employers, labor organizations, employment agencies or other persons and to take other actions against discrimination because of race, creed, color, national origin or ancestry or because of their

liability for service in the armed forces of the United States, as herein provided; and the division created hereunder is given general jurisdiction and authority for such purposes."

*N. J. S. A.* "18:25–9.1.    Enforcement of laws against discrimination in houses built with public funds or assistance

The Division Against Discrimination in the State Department of Education shall enforce the laws of this State against discrimination in housing built with public funds or public assistance, pursuant to any law, because of race, religious principles, color, national origin or ancestry.    The said laws shall be so enforced in the manner prescribed in the act to which this act is a supplement."

*N. J. S. A.* 18:25–12, to which reference is above made, enumerates acts which constitute unlawful employment practice or unlawful discrimination but contains no reference to discrimination in housing of any sort.

*N. J. S. A.* 18:25–13 states that a person "claiming to be aggrieved by * * * an unlawful discrimination" may file a complaint against the party alleged to have committed the "unlawful discrimination complained of."

Plaintiffs contend that *N. J. S. A.* 18:25–9.1 "does not establish any act of discrimination upon which a complaint may be founded"; that the "housing in question is not within the purview of that section"; that except "as to public or *quasi*-public housing, the jurisdiction of the Division Against Discrimination is limited to those acts of discrimination which are set forth in *R. S.* 18:25–12" and that "housing is not included in such delegated jurisdiction."

They urge that *N. J. S. A.* 18:25–5, *subd. d,* limits unlawful discrimination to those acts set forth in *N. J. S. A.* 18:25–12 other than "those connected with public or *quasi*-public housing as provided for in statutes designated in *R. S.* 18:25–9.1," and that therefore the alleged act of discrimination is not a statutory unlawful act of discrimination; hence the statute provides no justification for such complaint as was here made before the Division.

Plaintiffs further assert that when the Legislature amended the Law Against Discrimination in 1957 (*L.* 1957, *c.* 66,

*p.* 128) making the right of access to publicly assisted housing accommodations a civil right, it omitted to amend *N. J. S. A.* 18:25–12, the section which assertedly specifies the acts of discrimination under which the Division has jurisdiction; that while "the failure of the Legislature to have conferred upon the Division Against Discrimination, under section 11 (*R. S.* 18:25–12), the power argued for by the defendants herein, might have been the result of an inadvertent omission," it "may well have been intentional"; that defendants' argument that "if the court were to accept plaintiffs' position, the 1957 amendment, purporting to deal with 'publicly assisted' housing, would be futile legislation and that there would be no remedy for something which the Legislature sought to eliminate" is of no force; that it "would not be the first time that our courts have ruled that the Legislature did indeed adopt futile legislation." They cite in support of this argument *State v. Fair Lawn Service Center, Inc.,* 20 *N. J.* 468, 470 (1956). (However, see *Gundaker Central Motors, Inc. v. Gassert,* 23 *N. J.* 71, 83 (1956).)

Plaintiffs next contend that the aforesaid 1957 amendment to the Law Against Discrimination, "if construed to apply to plaintiffs and the housing in question," violates the Fourteenth Amendment to the Federal Constitution and paragraph 1 of Article I of the New Jersey Constitution. They assert that section 4 of the act (*N. J. S. A.* 18:25–4) "declaring it to be a civil right for all persons * * * to 'have the opportunity to obtain * * * the accommodations, advantages, facilities and privileges of any * * * publicly assisted housing accommodation * * *.'" (*L.* 1957, *c.* 66, *p.* 128, § 1), and the addition of the aforesaid subsection *k* to the definitions defining a "publicly assisted housing accommodation" to include "all housing financed in whole or in part by a loan, whether or not secured by a mortgage, the repayment of which is guaranteed or insured by the Federal Government or any agency thereof" (*L.* 1957, *c.* 66, *p.* 128, § 2), impinge on federal policy.

In support of their contention plaintiffs claim that said amendments constitute "an assumption by the state legislature of the exclusive federal power to determine requirements for the receipt of benefits conferred by federal acts," and represent "the adoption of a classification system wholly foreign and unrelated to the purpose of non-discrimination sought to be achieved."

Respondent Division contends, as set forth in its brief:

"1. That the statute applies to all housing 'financed' by FHA mortgage loans, and that such housing includes not only that on which FHA has already guaranteed a mortgage, but all housing in the course of planning and construction under procedures established by FHA to qualify the development for FHA guaranteed mortgages;

2. That in any event, the statute covers all 'publicly assisted housing,' and therefore includes any housing which has received material assistance in any way by operations or services of FHA;

3. That on either line of reasoning, plaintiffs' housing at Levittown and Green Fields Village, respectively, plainly falls within the scope of the law and within the enforcement powers of the Division Against Discrimination;

4. That the statute as so construed is valid and constitutional as a reasonable exercise of the police power of the State and in fulfillment of the provisions of the Constitution of New Jersey guaranteeing civil rights (*N. J. S. A.* 18:25-2)."

■ We hold that plaintiffs' contention that the housing in question is not "publicly assisted housing accommodation" within the meaning of *N. J. S. A.* 18:25-4 is without merit. To hold otherwise would require us to ignore the large scale operation of FHA in connection with plaintiffs' developments, the details of which have been above outlined. It is fair to conclude from the record before us that plaintiffs would not have undertaken the developments if they had not been assured of the availability of FHA financing.

■ We further hold that, as *N. J. S. A.* 18:25-4 and *N. J. S. A.* 18:25-5, *subd. k,* create and define the civil right involved, the Division is empowered by statute to "enforce the laws of this State against discrimination in housing built with public funds or public assistance, *pursuant to any law."* (Emphasis supplied) (*N. J. S. A.* 18:25-9.1.) We

are in accord with defendants' contention that the "laws of this State" mean the laws in effect at the time of the passage of *N. J. S. A.* 18:25–9.1 (1954) and all laws thereafter enacted, including *N. J. S. A.* 18:25–4 (1957). We also hold that Article I, paragraph 5 of the New Jersey Constitution is a "law" of the State within the meaning of *N. J. S. A.* 18:25–9.1 either considered by itself (*Marbury v. Madison,* 1 *Cranch* 137, 138, 5 *U. S.* 137, 2 *L. Ed.* 60 (1803) or as implemented by *N. J. S. A.* 18:25–4.

■■ We hold that plaintiffs have not shown a federal pre-emption of the field which would render nugatory state action forbidding racial discrimination in FHA housing. Neither do we find any merit in plaintiffs' contention that the 1957 amendment established "an unreasonable system of classification." See *New York State Commission Against Discrimination v. Pelham Hall Apartments,* 10 *Misc. 2d* 334, 170 *N. Y. S. 2d* 750 (*Sup. Ct.* 1958); 12 *Rutgers L. Rev.* 557 (1958).

The following philosophy pronounced in *Taylor v. Leonard,* 30 *N. J. Super.* 116, 121 (*Ch. Div.* 1954), is basic and applicable to the case at bar:

"The eventual survival of any form of government necessarily depends on the equal apportionment of the rights and privileges of citizenship as well as its obligations and duties among all its citizens irrespective of race, color or creed. Such a principle has long since been the keystone of our national and state form of government."

■■ Contention is finally made by the individual plaintiffs that action in the Division against them (who were officers of plaintiff corporations) is barred by time limitations in the statute itself (*N. J. S. A.* 18:25–18). The section provides that "any complaint filed pursuant to this section must be so filed within ninety days after the alleged act of discrimination." In the Levitt case plaintiffs assert that the acts of discrimination are alleged to have occurred June 28 and June 29, 1958, and the amended complaint was filed "no earlier than October 20, 1958"; in the Green

Fields case the corresponding dates are October 9, 1957 and "no earlier than September 23, 1958." They contend that an amended complaint "cannot relate back to the date of the original complaint as to new parties," and the date of filing the amended complaint is the controlling date in determining whether the action is barred by the limitation imposed.

Defendants seek to justify the amendments, as filed within time, on the following grounds (as stated in the brief of the individual respondents):

"(1) the amended complaints admittedly charge substantially the same acts as the original complaints. They merely add the officers who own or control and direct the corporations initially charged with the alleged acts of discrimination * * * (2) the said acts constituted continuing acts of discrimination up to the date of the filing of said amended complaint, it being charged in each of said amended complaints that: 'The aforesaid action of respondents (plaintiffs herein) was taken pursuant to a common and consistent scheme and plan to deny to Negroes the right to buy homes in the aforesaid development * * *.' (3) the Law Against Discrimination (*R. S. Cum. Supp.* 18:25–16) authorizes the Commissioner or the complainant 'reasonably and fairly to amend any complaint' without limitation as to time; (4) the Commissioner, in exercising his discretion authorizing and allowing the filing of the amended complaint, deemed said amended complaint fair and reasonable, and the exercise of such discretion has not been challenged by plaintiffs in these or any other proceedings; nor have the plaintiffs charged that they suffered any loss or prejudice as a result of said amendment."

The Division further contends in its brief that the amendment is justified because *R. R.* 4:34, governing civil practice in the Superior Court, provides that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just"; that although the court rules do not govern proceedings in the Division "they furnish an appropriate guide to what is fair and reasonable. * * *"

We are not in accord with these contentions. As to the specific dates of alleged discrimination, the 90-day period had long since expired. The fact that the allegation is made in the complaint before the Division that the action criticized

"was taken pursuant to a common and consistent scheme and plan to deny to Negroes the right to buy homes in the aforesaid development" does not justify the further conclusions asserted in the Division's brief that:

"\* \* \* Consequently, the last 'act of discrimination' within the meaning of the Law was not the particular transaction which took place in the Levitt case on June 28, 1958, or in the Green Fields case on October 9, 1957, but the prevention of the complainants from purchasing homes in the developments, and this continued right up to the date when the amended complaints were filed."

Having determined that the Law Against Discrimination applies to the housing developments undertaken by the corporate plaintiffs and, so applied, is constitutional and valid, we further hold that the complaints before the Division Against Discrimination state a cause of action within the enforcement jurisdiction of the Division.

As to the corporate appellants the stay heretofore entered is vacated to the end that the proceedings before the Division may be prosecuted as aforesaid. The complaints in the Division against appellants William J. Levitt, Robert A. Budd and Horace B. Peters are barred by the aforesaid 90-day limitation. Remanded for action not inconsistent with this opinion.