Elbert T. Gallagher, J.
Plaintiffs have moved for a preliminary injunction pending determination of a hearing for a perma *986 nent injunction enjoining defendant State Commission for Human Bights (hereinafter referred to as the Commission) from proceeding under article 15 of the Executive Law to conduct a hearing on the complaint of defendant Bamona Alveranga to determine whether any of the plaintiffs have violated the Law Against Discrimination, and further enjoining defendants Alveranga and Trommer from making any further public statements relative to the facts involved in this case, or from committing any further acts which will prejudice the rights of the plaintiffs in proceedings pending before this court, the Court of Appeals and the Commission.
Plaintiffs in the alternative move for a preliminary injunction enjoining the Commission from conducting its hearings pending a determination of an appeal before the Court of Appeals in the related case entitled Matter of Kamper, Meryle W. Clark, et al. v. Department of State of New York.
The defendant Commission, and defendants Alveranga and Trommer oppose plaintiffs’ motion and make cross motions to dismiss the complaint.
The controversy here and in the related proceeding is based upon alleged unlawful discriminatory practices by plaintiffs in regard to the sale and rental of housing accommodations to persons of the Negro race. One of those persons allegedly discriminated against because of her race was the defendant Bamona Alveranga. On February 25 and March 8, 1965 said defendant, Mrs. Alveranga, filed complaints with the Commission which charged that plaintiff Clark, a licensed real estate salesman, plaintiffs Neidich and Aries, her employers, and one Marie Kiernan, a person who had listed her house with the Aries-Neidich firm, had discriminated against Mrs. Alveranga in her efforts to buy Mrs. Kiernan’s and other houses because she was a Negro, in violation of section 296 (su-bd. 5, par. [a]) of the Executive Law.
Subsequent to commencing the proceeding with the Commission, Mrs. Alveranga and others brought their charges of racial discrimination to the attention of the Civil Bights Bureau of the State Attorney-General’s office. Mrs. Alveranga co-operated with the Attorney-General’s office in their investigation of the charges to the extent of signing an affidavit at .the request of the Attorney-General. In late June, 1965 the Attorney-General used Mrs. Alveranga’s affidavit and other information obtained from his investigation in filing a complaint against the AriesNeidich firm and the plaintiffs herein with the Secretary of State, After conducting a hearing on the Attorney-General’s *987 complaint, the Secretary of State concluded that plaintiff Meryle W. Clark had demonstrated “ untrustworthiness ” under subdivision 1 of section 441-c of the Beal Property Law by virtue of having discriminated against Mrs. Alveranga in regard to the proposed sale of Mrs. Kiernan’s house because Mrs. Alveranga was a Puerto Bican-Negro person. This determination was reached even though the Secretary of State found in his report that plaintiff Clark on January 14, 1965 negotiated the sale of another house (not Mrs. Kiernan’s) to Mrs. Alveranga in an all white community and that title closed conveying the property in June, 1965. Because of his determination as to plaintiff Clark’s conduct, the Secretary of State suspended her license as a real estate saleswoman for two months. The complaint against the Aries-Neidich firm was dismissed by the Secretary of State.
At the time of the Secretary of State’s decision in October, 1965 the investigating Commissioner of the Commission had already found probable cause to credit the allegations of Mrs. Alveranga’s complaints and had caused them to be noticed for a formal hearing pursuant to section 297 of the Executive Law.
Thereafter, plaintiff Clark, among other salesmen of the Aries-Neidich firm who had their licenses suspended in the same proceeding, brought proceedings in this court pursuant to CPLB article 78 to review and annul the determination of the Secretary of State suspending their licenses. An order by Justice Hugh S. Coyle of this court on January 3, 1966 granted plaintiff Clark’s request for a stay of execution of the license suspension and a stay of the Commission hearings pending the transfer of the article 78 proceeding to the Appellate Division, Second Department and a determination by that court.
On July 12, 1966 the Appellate Division confirmed the determination of the Secretary of State (Matter of Kamper v. Department of State, 26 A D 2d 697).
Plaintiff Clark and the other salesmen have taken an appeal to the Court of Appeals in the article 78 proceeding. Since Justiee Coyle’s stay of the Commission hearing became inoperative when the Appellate Division rendered its decision, the Commission proceeded to renotice the Alveranga complaints for hearing and after a number of adjournments they were scheduled for December 13, 1966. On that day plaintiffs’ counsel served an order to show cause in this motion and the summons and complaint herein. After a hearing on this motion and reservation of decision by this court, counsel for the defendant *988 Commission agreed to wait for a decision herein before going forward with any hearings.
The preceding statement of the facts and status of this case, substantially uncontroverted by all parties herein, the papers submitted, and counsels’ arguments at the hearing on this motion, in our opinion form sufficient basis for disposition of the motions before this court without any further hearing.
Although plaintiffs have couched their demand for relief against defendant Commission in the form of injunctive relief, in practical effect plaintiffs are challenging the jurisdiction of the Commission to conduct hearings on the Alveranga complaints. The issue of the jurisdiction of the Commission to proceed with its hearings indeed is the principal issue in this motion and in this action.
Plaintiffs argue that section 300 of article 15 of the Executive Law precludes defendant Commission from holding the hearings in question. They contend that because defendant Alveranga subsequently submitted her complaint of plaintiffs’ alleged discrimination to the Civil Eights Bureau of the Attorney-General’s office and thereby caused the institution of the Secretary of State’s proceeding against plaintiffs, the operation of section 300 of the Executive Law ousts the Commission from jurisdiction to continue with its proceeding. The plaintiffs also contend that since they have already been subjected to a proceeding in regard to their alleged discrimination, and since in plaintiff Meryle W. Clark’s case, she has already been punished for it, the Commission should not be permitted to continue with another proceeding on the same controversy.
In considering the plaintiffs’ arguments on the jurisdiction and statutory authority of the Commission, it should be noted first of all that the Commission has been “given general jurisdiction and power ’ ’ to eliminate and prevent racial discrimination in housing accommodations (among other things). (Executive Law, § 290.) The broad and indeed primary power given to the Commission in this field has been recognized by the courts. (Matter of Holland v. Edwards, 307 N. Y. 38, 43; Matter of Board of Higher Educ. v. Carter, 14 N Y 2d 138, 145,153; Gaynor v. Rockefeller, 15 N Y 2d 120,132,133.)
. The Commission, possessing primary responsibility in the field of racial discrimination, obtained jurisdiction before any other body when the Alveranga complaints were filed with it in February, March, 1965. The provision of section 300 of article 15 in question, states: “ The provisions of this article shall be construed liberally for the accomplishment of the pur *989 poses thereof. Nothing contained in this article shall be deemed to repeal any of the provisions of the civil rights law or any other law of this state relating to discrimination because of race, creed, color or national origin; but, as to acts declared unlawful by section two hundred ninety-six of this article, the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned. If such individual institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subsequently resort to the procedure herein.”
The only reported case directly involving section 300 and a similar issue on the Commission’s jurisdiction, supports the defendant Commission’s argument herein that once the Commission has jurisdiction of a controversy it cannot be ousted from that jurisdiction by the subsequent institution of an action by the aggrieved individual. In that case the individual discriminated against by reason of her race brought a subsequent action in New York City Municipal Court under sections 40 and 41 of the Civil Rights Law after having first filed a complaint with the predecessor to the present Commission. The court held that “ the commission would have sole jurisdiction and could not be ousted therefrom by the subsequent institution of the plenary action.” (Matter of Castle Hill Beach Club v. Arbury, 208 Misc. 622, 625, mod. on other grounds 1 A D 2d 943 [1st Dept.], rearg. den. 2 A D 2d 664, affd. as mod. 2 N Y 2d 596.)
Furthermore the wording of section 300 itself cannot support plaintiffs’ argument. The aggrieved individual concerned who first “ institutes any action based on such grievance ” may not subsequently resort to the procedure in article 15 of the Executive Law. (Emphasis added.) The aggrieved individual here, Mrs. Alveranga, came first to the Commission and filed her complaint pursuant to article 15. This fact alone would be sufficient to remove this case from any operation of section 300 which would prevent the Commission from exercising its jurisdiction. In addition it was the Attorney-General, and not the individual concerned, who brought the administrative proceeding, and not an “ action ”, with the Secretary of State. The instant case then presents even a stronger argument against ouster of the Commission from jurisdiction than did Matter of Castle Hill Beach Club v. Arbury (supra), since the aggrieved individual here brought no subsequent action.
If section 300 of the Executive Law would operate to preclude anything, it would seem only to preclude any other pro *990 ceeding from being instituted once the Commission procedure had been invoked. There is in fact some judicial authority to support the exclusiveness of the Commission’s jurisdiction once its proceedings have been commenced and are pending. (Redd v. Zier, 229 N. Y. S. 2d 582, 585, 586; Gaynor v. Rockefeller, 21 A D 2d 92, 97, affd. 15 N Y 2d 120, supra.)
However, the Appellate Division in Matter of Kamper (26 A D 2d 697, supra) apparently has rejected any exclusiveness of the Commission’s jurisdiction in the instant controversy when it stated: “Moreover, we further conclude that the fact that racial discrimination by real estate brokers and salesmen may properly form the basis of a complaint to the State Commission for Human Bights, does not thereby bar the Department of State from disciplining such licensees under Beal Property Law (§ 441-c, subd. 1) for demonstrating ‘ untrustworthiness ’ by such conduct. The Department of State is not hereby enforcing article 15 of the Executive Law but is merely exercising the disciplinary powers which it has over real estate brokers and salesmen (cf. National Broadcasting Co. v. United States, 319 U. S. 190), and such licensing agency cannot be prevented from invoking its disciplinary powers by virtue of the fact that an individual has proceeded under a statute which provides an alternative remedy for the conduct complained of.” While the Appellate Division did not rule on the issue of the jurisdiction of the Commission, since the issue of the jurisdiction of the Department of State was the only one before that court, its decision quoted above certainly supports the view that both administrative bodies, the Department of State and the Commission, have jurisdiction over the controversy involved here, and that each may conduct its own proceedings on it. The Appellate Division, First Department also supports this view of dual jurisdiction, when it states, citing Matter of Kamper-. “The fact that certain actions may be expressly prohibited by one branch of the law upon pain of a specified penalty [Executive Law, art. 15] does not preclude the consideration of such acts, if proved, in measuring the calibre of the actor to determine if he is a person to be trusted in dealing with the general public [‘ untrustworthiness ’ under section 441-c of the Beal Property Law] ” (Matter of Diona v. Lomenzo, 26 A D 2d 473, 477.)
Concluding then on the issue of the statutory authority and jurisdiction of the Commission to continue with its proceedings, in our opinion the Commission has that authority and jurisdiction. Possessing primary responsibility in the field of unlaw *991 ful discrimination, it obtained jurisdiction over this controversy before any other body and cannot be ousted from that jurisdiction by the subsequent proceeding by the Department of State. Even if the Department of State did not have jurisdiction over this controversy, (which is not, with good reason, the view of the Appellate Division in Matter of Kamper, supra), the jurisdiction of the Commission would not be impaired.
After concluding that the Commission has jurisdiction under the applicable law to continue with its hearings on this controversy, the issue arises as to whether it should be permitted to exercise that jurisdiction in view of the previous proceedings in this matter and possible unjust and inequitable effects of subjecting plaintiffs to another review of the circumstances involved in this controversy. And the plaintiffs have raised an additional objection that the Commission hearings would serve no purpose other than to harass and humiliate plaintiffs and to gratify “ the statistics of the defendant Commission.” Plaintiff Clark also argues that all the Commission could do would be to order her not to discriminate against Mrs. Alveranga which “would be ludicrous since I was the real estate saleswoman who negotiated the sale of a house to the defendant Alveranga which she now. occupies and owns.” Plaintiffs’ arguments are not completely without merit.
First of all some issues which in fact are not specifically raised by plaintiffs but which are perhaps implicit in their arguments should be considered. There is no “ double jeopardy ” involved in the Commission hearing, since the doctrine of double jeopardy is limited to consecutive criminal prosecutions, and both the Commission and Department of State proceedings are civil actions in the nature of remedial administrative proceedings. Also the Commission hearing is not barred by res judicata or collateral estoppel because the Commission was not a party to the Department of State’s proceeding, the Commission is a quasi-judicial body with an existence apart from the Department of State with jurisdiction to adjudicate cases against the State and other State agencies, and there are different issues and remedies in the Commission proceeding (whether the plaintiffs have violated the Law Against Discrimination and therefore should be ordered to cease and desist from committing unlawful discriminatory practices) than those in the Department of State’s proceeding (whether plaintiffs had demonstrated untrustworthiness under section 441-c of the Real Property Law).
*992 Plaintiffs’ argument of the unfairness in twice subjecting them to scrutiny in regard to the same alleged unlawful discriminatory practices, can also be answered by observing that it is not uncommon in the law for the same acts to be in violation of two or more statutes or common-law rules and to subject the actors to separate proceedings. For example a motor vehicle accident case involving a death can subject the defendant to a civil damage suit for negligence and a criminal prosecution for criminal negligence under section 1053-a of the Penal Law.
At first glance plaintiffs’ contention that the Commission hearing would serve no purpose since plaintiff Clark has already sold a house to defendant Alveranga appears to be a strong equitable argument against the Commission proceeding even though it might have jurisdiction. But this argument is also answered and must be rejected in view of the broad powers of the Commission under article 15 and judicial interpretation of those powers. Under section 297 of the Executive Law the Commission has the power to order a respondent to cease and desist from continuing a general policy of discrimination. Its power is not limited to providing relief for a particular complainant.
A case in point here is Ranadazzo v. State Comm. on Human Rights (24 A D 2d 1019 [2d Dept.]). In that case Mrs. Crum, a Negro person, alleged that she was refused an apartment in plaintiff’s apartment house because she was a Negro. After a hearing on her complaint the Commission found against the apartment house owner and included in its order a direction not to discriminate against any Negroes, as well as Mrs. Crum. Special Term, Nassau, modified this order on the grounds that Mrs. Crum had located another apartment and no longer desired to occupy the housing accommodation of which she was unlawfully deprived. Consequently, Special Term held, there was no need to compel the owner to comply with those provisions of the Commission’s order directing the owner not to discriminate against any person on the basis of race in renting his apartments. The Appellate Division reversed reinstating the Commission’s general order stating: “there was substantial evidence upon which the commission could find that the respondents [owners] had a general policy of discriminating against negroes in the rental of apartments solely because of their race. The order of the commission is properly designed to remedy the practice (cf. Matter of Holland v. Edwards, 307 N. Y. 38; Matter of New York State Comm. Against Discrimination v. Pelham Hall Apts, 10 Misc 2d 334).”
*993 In the same way in the instant case the Commission might find that the plaintiffs were engaging in a general policy of unlawful discrimination in their real estate practice, and the fact that Mrs. Alveranga may no longer need relief as an individual, would not render meaningless an order the Commission might hand up.
We now proceed to a consideration of some additional issues raised by plaintiffs on their motion and in their complaint. Plaintiffs contend that the defendant Commission should be enjoined from making any public statements concerning this case, and by implication contend that the Commission’s hearings should be enjoined because such statements preclude a fair hearing before the Commission. It appears that plaintiffs are complaining about two press releases issued by the Commission (which are attached to the Commission’s opposing affidavit). The press releases are brief, do not discuss the merits of the case and simply notify the press of the time and place of the hearing and what is alleged in the complaint. It may be said that the issuance of press releases notifying the public that a certain case is before it by a judicial body is of questionable propriety and may even serve to compromise the objectivity of that body in some cases. However, the context of the press releases here complained of is not, in our opinion, of such a character as may reasonably be held likely to preclude a fair hearing for plaintiffs before the Commission.
Plaintiffs’ cause of action against defendants Alveranga and Trommer is related to the issues just discussed. Plaintiffs complain of the public statements made by way of press releases, letters to public officials and “ leaflet distribution ” by defendants Alveranga and Trommer relative to the facts in this case, and seek to enjoin any such further statements. Plaintiffs have furnished very little detail or specification of the alleged offensive statements in their moving papers and in their unverified complaint. However defendants Alveranga and Trommer have submitted copies of their alleged harmful and prejudicial statements, letters, etc. Most of the material simply urges friends of the Yonkers Fair Housing Committee to attend scheduled public hearings before the Commission and the Secretary of State on the controversy involved herein. We find nothing improper, or unduly prejudicial to plaintiffs, in the distribution of such material. The letter sent to the Secretary of State by the Yonkers Fair Housing Committee (of which defendant Trommer is a director), was sent after the Secretary *994 of State had held his hearing and reached his determination concerning plaintiffs’ conduct, Certainly this incident could not have prejudiced plaintiffs’ rights before the Secretary of State, and just as certainly could not affect their rights before the defendant Commission.
Another of defendants Alveranga’s and Trommer’s actions complained of was a newsletter sent to friends of the Yonkers Fair Housing Committee in September, 1965 urging them to write the Secretary of State and tell him that they were “ eagerly awaiting his meaningful decision in the matter of Aries-Neidich This'statement in our opinion would not have precluded a fair hearing before the Secretary of State, and is of course of even remoter significance in any hearing to be held before the defendant Commission.
We conclude that all of the individual defendant’s past actions taken together do not justify this court in issuing the general injunction demanded by plaintiffs. In fact what the plaintiffs are really seeking is a prior restraint, an order commanding the individual defendants not to do anything in the future to prejudice the rights of plaintiffs — in other words a command to obey the law. A prior restraint abridging the defendant’s right of free speech under the First Amendment to the United States Constitution could only be justified if there is a clear showing of imminent danger that the plaintiffs’ right to a fair hearing before the defendant Commission was threatened by the individual defendant’s actions. ■ (Cf. Thomas v. Collins, 323 U. S. 516, 529, 530; Bridges v. California, 314 U. S. 252, 268, 269; Earl v. Brewer, 248 App. Div. 314.)
..As against the individual defendants, plaintiffs appear also to attempt to spell out a .cause of action for libel and slander. Even giving plaintiffs every benefit of liberality sanctioned by the CPLR in construing their complaint, in our opinion no cause of action for defamation can be found. For one thing the complaint does not comply with CPLR 3016 as to specification of the actionable statements. ■
. We come finally to plaintiffs’ request for alternative relief enjoining the defendant Commission from proceeding until the Court of Appeals has determined the appeal in the related case Matter of Kamper (supra). First of all the issues involved in that case do not: involve those in this motion and action. The principal issue in Kamper is the jurisdiction of the Department of, State,, while here it is the jurisdiction of the defendant Commission.".- Furthermore the Court of Appeals, and not this court, *995 is the proper forum in which to seek a stay of the defendant Commission’s proceeding pending the determination of that court.
On the foregoing then we conclude that plaintiffs have failed to demonstrate they will suffer irreparable harm if the defendant Commission continues its proceedings, and therefore plaintiffs’ motion for a preliminary injunction is denied in all respects, and as to all of the defendants.
Defendant Commission’s motion to dismiss the complaint as to it is granted, and defendants Alveranga’s and Trommer’s motion to dismiss the complaint as to them is also granted.