[Civ. No. 18921. Second Dist., Div. Three. June 30, 1952.]

WILLIE K. MANSFIELD, Appellant, v. HAZEL HYDE et al., Respondents.

Krag & Sweet for Appellant.

Barrick & Wright for Respondents.

VALLÉE, J.—Appeal by plaintiff and cross-defendant from a judgment for defendant and cross-complainant on her cross-complaint in an action for money. Since there is no appeal from an order denying a motion for a new trial (Code Civ. Proc., § 963), the appeal therefrom will be dismissed.

On May 3, 1949, plaintiff, the maternal grandmother, Betsy Mansfield Lovett, the mother, and Herman W. Lovett, the stepfather, of Jay Mansfield Lovett, a minor aged 7½, entered into a written agreement with defendant whereby she was given the sole and exclusive care of the minor free from all interference by plaintiff, his mother, and stepfather. Defendant agreed to devote her best efforts to the training and education of the minor during the term of the agreement, which was for a period of not less than one year, beginning April 25, 1949. Defendant agreed to reside with the minor "and assistant, or assistants, in her residence in Twenty-nine Palms, California, or other appropriate resi-

dence.'' It was agreed that the grandmother, mother, and stepfather would abide by the decisions of defendant ''in matters of care, training and education.'' Plaintiff agreed to deposit $1,000 each month in a bank to the credit of defendant, and defendant agreed to use it for the payment of all expenses incurred on behalf of the minor, other than doctor, druggist, and clothing bills, and to retain the balance in payment for her services. From April, 1949, until May, 1950, the minor resided continuously with defendant in her home at Twenty-nine Palms except for trips to the east which he took in company with defendant.

Defendant did not, at the time the contract was entered into, have a license or permit from the State Department of Social Welfare, or from an inspection service approved or accredited by the department, or from the State Department of Health, to do any of the things done by her; nor did she have such a license or permit during the life of the contract.

On June 19, 1950, plaintiff-grandmother brought the present action for money had and received, alleging that between April, 1949, and January, 1950, defendant had received $10,-250 from plaintiff, to and for the use and benefit of plaintiff. Defendant filed an answer and cross-complaint, setting up the written contract of May 3, 1949, alleging full performance by her and default by plaintiff in payment of $1,700 ₀ on account of monthly payments falling due in February and March, 1950. Plaintiff's answer to the cross-complaint alleges as an affirmative defense that the written contract was illegal and void.

The issue presented to the trial court was whether the agreement was illegal and void by reason of defendant's failure to obtain a license or permit under the provisions of section 1620 et seq. of the Welfare and Institutions Code[1]

---

[1]Section 1620, Welfare and Institutions Code: ''No person, association, or corporation shall, without first having obtained a written license or permit therefor from the State Department of Social Welfare or from an inspection service approved or accredited by the department:

''(a) Maintain or conduct any institution, boarding home, day nursery, or other place for the reception or care of children under sixteen years of age, nor engage in the business of receiving or caring for such children, nor receive nor care for any such child in the absence of its parents or guardian, either with or without compensation.

''(b) Engage in the finding of homes for children under sixteen years of age, or place any such child in any home or other place, either for temporary or permanent care or for adoption.''

or sections 1500 et seq. of the Health and Safety Code,[2] as they read at the date of the contract.

The court found: the written agreement was valid and enforceable; defendant had fully performed all her duties and obligations in accordance with its terms; in performing, she did not violate the provisions of the Welfare and Institutions Code, section 1620 et seq., or the provisions of the Health and Safety Code, section 1500 et seq.; plaintiff was in default under the terms of the agreement in that she has refused to pay a balance of $1,700 due on account of monthly payments falling due on February 25, and March 25, 1950. The court concluded that plaintiff was not entitled to "any" judgment on her complaint but made no adjudication thereon in the judgment. It adjudged that defendant on her cross-complaint recover from plaintiff $1,700 with interest.

Plaintiff argues that the judgment is contrary to law, the findings are not supported by the evidence, that defendant clearly comes within the provisions of section 1620 of the Welfare and Institutions Code, since the evidence conclusively established that defendant maintained and conducted a place for the reception or care of children under the age of 16 years, also that she was engaged in the business of receiving or caring for children, and further that she received and cared for the child in the absence of its parents, without a license or permit contrary to the provisions of section 1620.

A license or permit is required if a person maintains or conducts any place for the reception or care of children

---

[2]Section 1502, Health and Safety Code: "No person shall establish, conduct, or maintain in this State any establishment which provides for handicapped persons organized services including any special services without first obtaining a license therefor as provided in this chapter."

Section 1501, Health and Safety Code: "As used in this chapter the following terms have the meanings set forth in this section:

"(a) 'Special services' means schooling, medical advice or treatment, physiotherapy, any form of muscle training, massage, speech training, occupational therapy, vocational training, and custodial care, or any of them.

"(b) 'Establishment' means any school, institute, institution, center, custodial home, facility, or other place which provides services for handicapped persons, but does not include any sanatorium, establishment, home or institution conducted by or for the adherents of any well recognized religious sect, denomination or organization for the purpose of providing facilities for the care of handicapped persons who depend upon prayer or spiritual means for healing in the practice of the religion of such sect, denomination or organization, nor does it include any private business school or college, the principal purpose of which is the teaching of business, commercial, and vocational courses."

under 16 years of age, or engages in the business of receiving or caring for such children, or receives or cares for any such child in the absence of its parents or guardian, either with or without compensation. Section 1629 of the Welfare and Institutions Code makes it a misdemeanor to operate as provided in section 1620 without first having secured a license or permit.

At the time the parties entered into the contract, plaintiff's grandson was 7½ years of age. He suffered from an impairment of faculties which required, in addition to medical attention, the constant supervision of a person of skill and training in the educational treatment of such cases. During the life of the contract, he resided with, and was cared for by defendant in her home. When defendant first met plaintiff in March of 1949, she had in her charge, under a contract similar to that involved here, a "little" girl from New York suffering from cerebral palsy. The "little" girl resided with her in her home until the arrival of plaintiff's grandson. She lived with, and in the home of, defendant for two short periods while plaintiff's grandson was also living there; on the other occasions she lived in the home of one of defendant's assistants some little distance from defendant's home. Although she lived elsewhere the "little" girl was brought to defendant's home "for the things that I [defendant] was doing with her," and defendant continued to receive compensation for her services to the "little" girl three months after plaintiff's grandson was taken in charge by her. Besides herself and the children, defendant's household consisted of a maid and a housekeeper. Although defendant did not personally take care of the feeding, clothing, and similar needs of the children, but had others do so, and in the case of plaintiff's grandson, employed additional assistants to teach him formal school work, music, and physical education, defendant testified that "Both he [plaintiff's grandson] and the people I engaged were under my direction. . . . I would say that my direct relationship with the child was that of teaching him decent habits of conduct." She also testified that her work was "conduct problems, cerebral palsy and polio." The foregoing is all of the evidence bearing on the question for decision.

"Business" in its broad sense embraces everything about which one can be employed; the word is often synonymous with calling, occupation, or trade, engaged in for the purpose of obtaining a livelihood or profit or gain. (*Marin*

*Municipal Water Dist.* v. *Chenu,* 188 Cal. 734, 738 [207 P. 251].) ■ "To 'engage in' is to be occupied in, to be employed in." (*People* v. *Coppla,* 100 Cal.App.2d 766, 768 [224 P.2d 828].)

"Care" is defined as charge, oversight, or management, implying responsibility for safety; also custody; temporary charge. (Webster's New Internat. Dict., 2d ed.) The care of children encompasses a variety of duties and services which may consist of something more than mere custodial care—i.e., housing, feeding, and attention to the usual needs of children. It may consist of additional duties and services, depending upon the particular training, qualification, special skill, and talent of those who hold themselves out as qualified to do certain things with children which serve as an inducement to their selection and employment.

There is no evidence that defendant's work with "conduct problems, cerebral palsy and polio" was confined to children of tender years, but there is evidence that the children she cared for during the life of the contract here were such, and that she made her livelihood thereby. ■ While defendant's fine educational background, her outstanding qualifications, ability and experience rendered her eminently qualified in her field of endeavor and these, necessarily, were important factors taken into consideration by those who placed children in her care, the conclusion is inescapable that the evidence, without conflict, conclusively establishes that defendant (1) maintained and conducted a place for the reception or care of children under the age of sixteen years, (2) was engaged in the business of receiving or caring for children, and (3) that while so engaged she received and cared for such a child in the absence of its parents, within the purview of section 1620 of the Welfare and Institutions Code. Compliance with the licensing provisions thereof is, therefore, essential to her right of recovery on the contract. Since she had no license, the contract was illegal and void.

"[I]t has been repeatedly declared in this state that 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract' [Citations]; and that 'whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case.' " (*Loving & Evans* v. *Blick,* 33 Cal.2d 603, 607 [204 P.2d 23], and cases there cited; see, also, *Franklin* v. *Nat*

*C. Goldstone Agency,* 33 Cal.2d 628 [204 P.2d 37]; Anno.; 30 A.L.R. 834; 42 A.L.R. 1226; 118 A.L.R. 646.)

 The state, in its position of *parens patriae,* is charged with continuing interest in the welfare of minor children and has surrounded the matter of their custody and care with many protective laws. ( *Ex Parte Barents,* 99 Cal.App. 2d 748, 750 [222 P.2d 488].) The legislative purpose in requiring a license or permit for the privilege of maintaining or conducting a place for the reception or care of children under the age of 16 years, or engaging in the business of receiving or caring for such children, or receiving or caring for such child in the absence of its parents or guardians, is, obviously, to prevent improper persons from being thus engaged and improper facilities from being used.

 When the object of a statute requiring a license is to prevent improper persons from engaging in a particular activity, or is for the purpose of regulating an occupation or business for the protection of the public, the imposition of the penalty amounts to a prohibition against engaging in the occupation or business without a license, and a contract made by an unlicensed person in violation of the statute is invalid. (*Joseph* v. *Drew,* 36 Cal.2d 575, 577 [225 P.2d 504]; *Wood* v. *Krepps,* 168 Cal. 382, 386 [143 P. 691, L.R.A. 1915B 851].)

 Defendant's failure to comply with the licensing provision of section 1620 therefore precludes her recovery of compensation for the work and services performed and monies advanced while so unlicensed. (*Holm* v. *Bramwell,* 20 Cal.App.2d 332, 337 [67 P.2d 114].) Neither can plaintiff recover the monies paid pursuant to the terms of the contract. It is a well settled general rule that a party to an illegal contract may not obtain the aid of the courts either to enforce such agreement directly or to recover any consideration parted with pursuant thereto; the law leaves the parties where it finds them. (Restatement, Contracts, § 598; Woodward, The Law of Quasi Contracts, § 135; 17 C.J.S., 656, § 272.) Nor does there appear here to be any basis for application of the recognized qualification to this general rule, that a party not equally at fault may secure relief from the consequences of an illegal agreement. (17 C.J.S., 660, § 274.)

Plaintiff, pursuant to the agreement, deposited $5,000 in a savings account in First Trust and Savings Bank of Pasadena, from which payments were made to defendant. Sub-

sequent deposits and withdrawals were made from time to time, leaving a present balance of $1,319.31, with accumulated interest. The bank was named as a party defendant and, in its answer, offered to pay the balance to the person or persons adjudged entitled thereto. The court adjudged that the bank pay the same to defendant and that, when paid, it be credited against the judgment of $1,700 awarded her against plaintiff. The court should have adjudged that plaintiff is entitled to the $1,319.31 and accumulated interest.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is reversed with directions to the superior court to amend its findings of fact and conclusions of law and render judgment in accordance with the views herein expressed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1952. Carter, J., was of the opinion that the petition should be granted.