[S. F. No. 20809. In Bank. Mar. 26, 1962.]

SEABORN BURKS, JR., et al., Plaintiffs and Appellants, v. POPPY CONSTRUCTION COMPANY et al., Defendants and Respondents.

Marshall W. Krause for Plaintiffs and Appellants.

Charles F. Jonas, Lemuel H. Matthews and Fred G. Meis for Defendants and Respondents.

GIBSON, C. J.—Plaintiffs, members of the Negro race, brought this action for damages and injunctive relief alleging discrimination with respect to the sale of a house in a tract. The first cause of action is based on the Unruh Civil Rights Act (Civ. Code, §§ 51 and 52, as amended in 1959), which deals with discrimination in "business establishments," and the second is based on the Hawkins Act (Health & Saf. Code, §§ 35700-35741, added in 1959) which relates to discrimination in "publicly assisted housing accommodations."[1] Both acts were passed at the 1959 legislative session.

A general demurrer filed by defendants, Poppy Construction Company and its employee, Sherman Cornblum, was sustained without leave to amend as to the first cause of action and with leave to amend as to the second cause of action.[2] Plaintiffs did not amend, and judgment was entered for defendants.

### First Cause of Action—Unruh Act

The allegations of the first cause of action may be summarized as follows: Plaintiffs are husband and wife and members of the Negro race. At the times involved here

---

[1]Section 51 of the Civil Code provides that it shall be known as the "Unruh Civil Rights Act." Section 52, although not included in this designation, was amended by the same chapter and provides a penalty for violation of section 51.

Sections 35700-35741 of the Health and Safety Code have been referred to by the parties as the "Hawkins Act," and, for convenience, we shall use the same reference.

[2]Other defendants filed answers and are not involved upon this appeal.

defendant Poppy Construction Company was engaged in the business of developing, building, and selling a tract of housing accommodations, and defendant Cornblum was its employee. Defendants operated business establishments in California for the sale of houses in the tract and offered them for sale to the public by advertising and displaying a model home. In December of 1959 plaintiffs, who were willing and able to purchase housing in the tract, offered to purchase the house at 338 Marietta Drive, San Francisco, or any other house in the tract offered to the public generally for $27,950. Defendants maintained a policy and practice of refusing to sell housing in the tract to Negroes and, because of plaintiffs' race and color, defendants refused to sell any house in the tract to plaintiffs upon conditions offered to non-Negroes. Unless relief is granted, plaintiffs will suffer irreparable injury because the houses in the tract will be sold to others. Plaintiffs seek to recover damages and, further, ask that defendants be enjoined from discriminating against them and persons similarly situated.

The Unruh Act provides in part: "All persons within the jurisdiction of this State are free and equal, and no matter what their race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51.) Section 52 of the Civil Code provides that whoever denies these rights, or aids or incites such a denial, is liable for each offense for actual damages and, in addition, $250.

The Legislature used the words "all" and "of every kind whatsoever" in referring to business establishments covered by the Unruh Act (Civ. Code, § 51), and the inclusion of these words, without any exception and without specification of particular kinds of enterprises, leaves no doubt that the term "business establishments" was used in the broadest sense reasonably possible. The word "business" embraces everything about which one can be employed, and it is often synonymous with "calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain." (See *Mansfield* v. *Hyde,* 112 Cal.App.2d 133, 137 [245 P.2d 577]; 5 Words and Phrases (perm. ed. 1940) p. 970 et seq.) The word "establishment," as broadly defined, includes not only a fixed location, such as the "place where one is permanently fixed for residence or business," but also a permanent "commercial force or organization" or "a per-

manent settled position (as in life or business).'' (See Webster's New Internat. Dict. (2d ed. 1957) p. 874; *id.* (3d ed. 1961) p. 778.) It is clear that defendants operated ''business establishments'' within the meaning of the term as used in the Unruh Act.

 The original version of the bill which was presented to the Legislature, in addition to affording protection in ''business establishments,'' referred specifically to the right ''to purchase real property'' and to other rights, such as the obtaining of ''professional'' services. Section 51, as enacted in 1959, eliminated all such specific references.[3] (For the various versions of the bill see Horowitz, *California Equal Rights Statute* (1960) 33 So.Cal.L.Rev. 260, 265-270.) These deletions can be explained on the ground that the Legislature deemed specific references mere surplusage, unnecessary in view of the broad language of the act as finally passed. (*Cf. Western Union Tel. Co.* v. *Lenroot,* 323 U.S. 490, 501 [65 S.Ct. 335, 89 L.Ed. 414]; Radin, *A Case Study in Statutory Interpretation* (1945) 33 Cal.L.Rev. 219, 224.) It should be noted in this connection that in the original bill the general term ''business establishments'' was not, as now, followed by the words ''of every kind whatsoever'' and that those words were added in the draft that deleted the specific reference to the purchase of real property.

 There is no merit to defendants' contention that the adoption of the Hawkins Act at the same session of the Legislature in which the Unruh Act was passed shows an intent that the Hawkins Act is to be the sole measure relating to discrimination with respect to real property transactions. Although the operation of the two statutes overlaps in some particulars, their provisions differ in essential respects.[4]

 The Unruh Act relates only to discriminatory practices in ''business establishments.'' The Hawkins Act is confined to discrimination by an ''owner'' of a ''publicly assisted housing accommodation'' with knowledge of such assistance. Some transactions, even though not involving ''business establish-

---

[3]As introduced, the bill read in part: ''All citizens within the jurisdiction of this State, no matter what their race, color, religion, ancestry, or national origin, are entitled to the full and equal admittance, accommodations, advantages, facilities, membership, and privileges in, or accorded by, all public or private groups, organizations, associations, business establishments, schools, and public facilities; to purchase real property; and to obtain the services of any professional person, group or association.''

[4]For the provisions of the Hawkins Act see *post,* pp. 512, 513.

470

ments" within the meaning of the Unruh Act, would nevertheless come within the terms of the Hawkins Act. Other transactions which are within the Unruh Act because they involve business establishments may not involve a "publicly assisted housing accommodation" as defined in the Hawkins Act. The two statutes also provide for different measures of recovery, namely, damages caused in a sum not less than $500 under the Hawkins Act and actual damages plus $250 under the Unruh Act.

A court must, where reasonably possible, harmonize statutes and construe them so as to give force and effect to all their provisions. Both statutes are designed to discourage discrimination, and it would be unreasonable to hold that the provisions of the Hawkins Act, relating to only part of the housing field, reflect an intent to exclude from the Unruh Act all discriminatory practices with respect to housing, including those that clearly come within the terms of the Unruh Act but are not covered by the provisions of the Hawkins Act. Even as to a case appearing to come within both enactments, we cannot properly hold that the sections of the Hawkins Act were intended to exclude all operation of the Unruh Act without regard to the circumstances. Of course, a plaintiff should not be permitted to recover under both acts and obtain double damages for the same discriminatory conduct, but he may proceed to trial on alternative causes of action if they are properly pleaded.

Although the Unruh Act makes no express provision for injunctive relief, that remedy as well as damages may be available to an aggrieved person. Former sections 53 and 54 of the Civil Code, replaced by the Unruh Act, were also civil rights statutes, and the fact that they provided only for damages did not exclude injunctive relief. (*Orloff* v. *Los Angeles Turf Club,* 30 Cal.2d 110, 113-114 [180 P.2d 321, 171 A.L.R. 913].) And a person whose civil rights are invaded as a result of discrimination against a group on the basis of race or ancestry may bring an action for injunctive relief on behalf of all members of the group similarly situated. (*Williams* v. *International etc. of Boilermakers,* 27 Cal.2d 586, 594 [165 P.2d 903] ; *James* v. *Marinship Corp.,* 25 Cal.2d 721, 724-725, 745 [155 P.2d 329, 160 A.L.R. 900] ; *Banks* v. *Housing Authority,* 120 Cal.App.2d 1, 23 [260 P.2d 668] ; *Brown* v. *Board of Education,* 347 U.S. 483, 495 [74 S.Ct. 686, 98 L.Ed. 873, 38 A.L.R.2d 1180] ; *Sharp* v. *Lucky,* 252 F.2d 910, 913.)

 Discrimination on the basis of race or color is contrary to the public policy of the United States and of this state. Although the antidiscrimination provisions of the federal Constitution relate to state rather than private action, they nevertheless evidence a definite national policy against discrimination. (*James* v. *Marinship Corp.*, 25 Cal.2d 721, 739-740 [155 P.2d 329, 160 A.L.R. 900].) The Legislature in the exercise of the police power may in appropriate circumstances prohibit private persons or organizations from violating this policy. Thus in *Railway Mail Assn.* v. *Corsi*, 326 U.S. 88, 93-94 [65 S.Ct. 1483, 89 L.Ed. 2072], a New York statute which prohibited labor organizations from discriminating in membership or union services was upheld against the contention that it violated the due process clause as an interference with the right of the organization to select its membership and as an abridgment of its property rights and liberty of contract.

 For more than 50 years prior to the enactment of the Unruh Act, sections 51 and 52 of the Civil Code contained provisions prohibiting discrimination in places of "public accommodation or amusement." The constitutionality of this legislation was upheld in *Piluso* v. *Spencer* (1918) 36 Cal. App. 416, 419 [172 P. 412], and there is no valid reason why the extension of the prohibition against discrimination to "all business establishments," including those dealing with housing, would be violative of due process. Discrimination in housing leads to lack of adequate housing for minority groups (*Levitt & Sons, Inc.* v. *Division Against Discrimination etc., Dept. of Education*, 31 N.J. 514 [158 A.2d 177, 186]), and inadequate housing conditions contribute to disease, crime, and immorality. Under the police power reasonable restrictions may be placed upon the conduct of any business and the use of any property (*In re Gilstrap*, 171 Cal. 108, 116 [152 P. 42, Ann. Cas. 1917A 1086]; *County of Plumas* v. *Wheeler*, 149 Cal. 758, 762 [87 P. 909]), and the restriction here imposed in furtherance of the policy against discrimination is reasonable.

### Second Cause of Action—Hawkins Act

It is alleged in the second cause of action, in addition to the matters averred in the first, that the housing accommodations in the tract were "publicly assisted" within the meaning of the Hawkins Act and that defendants knew of such assistance. The act provides that it is unlawful for an "owner" of a "publicly assisted housing accommodation,"

with knowledge of such assistance, to discriminate against any person because of his race, color, religion, national origin, or ancestry in connection with the rental or sale of the housing accommodation. (Health & Saf. Code, § 35720.)[5] Section 35700 of the Health and Safety Code declares that such discrimination is against public policy and that the portion of the code dealing with the matter shall be deemed an exercise of the police power.

The term "owner" is defined as including the lessee, sublessee, assignee, managing agent, or other person having the right of ownership or possession or the right to rent or lease housing accommodations and includes the state and any of its political subdivisions and any agency thereof. (Health & Saf. Code, § 35710, subd. 4.)

The term "publicly assisted" housing accommodation is defined as including any housing accommodation which (1) enjoys an exemption from taxes levied by the state or its subdivisions other than one allowed to veterans; (2) is constructed on land sold below cost by the state or its subdivisions pursuant to the Federal Housing Act of 1949 or is acquired by them for the purpose of such construction; (3) is located in a "multiple dwelling" and is financed in whole or in part by a governmentally insured loan with respect to acquisition, construction, repair, or maintenance; or (4) is offered for sale by a person who controls the sale of five or more housing accommodations on contiguous land if the acquisition, construction, repair or maintenance of such accommodations is financed in whole or in part by a governmentally insured loan or if a commitment, issued by a governmental agency, is outstanding that the acquisition of such housing accommodations may be financed in whole or in part by a governmentally insured loan. (Health & Saf. Code, § 35710, subd. 3.)

The term "housing accommodation" is defined in the usual

---

[5]Section 35720 of the Health and Safety Code provides in part: "It shall be unlawful: 1. For the owner of any publicly assisted housing accommodation with knowledge of such assistance to refuse to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodation because of the race, color, religion, national origin, or ancestry of such person or persons. 2 For the owner of any publicly assisted housing accommodation with knowledge of such assistance to discriminate against any person because of the race, color, religion, national origin or ancestry of such person in the terms, conditions or privileges of any publicly assisted housing accommodations or in the furnishing of facilities or services in connection therewith."

sense except that it excludes accommodations operated by religious, fraternal, or charitable associations or corporations not operated for private profit. "Multiple dwelling" is defined, with certain exceptions, as one which is occupied, as a rule, for permanent residence purposes and is rented to be occupied as the residence of three or more families living independently of each other. (Health & Saf. Code, § 35710, subds. 2, 6.)[6]

Any person aggrieved by a violation of the Hawkins Act has a right of action for restraint of such violation and other equitable relief and for damages in a sum not less than $500. (Health & Saf. Code, § 35730.)

■■■ The sustaining of the demurrer to the second cause of action cannot be justified on the ground that the allegation that the housing accommodations were "publicly assisted" was merely a conclusion of law. ■■■ The distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree. (*Estate of Bixler*, 194 Cal. 585, 589 [229 P. 704]; see Clark on Code Pleading (2d ed. 1947) 231; Chadbourn, Grossman, Van Alstyne, California Pleading (1961) 812 et seq.; 2 Witkin, California Procedure (1954) 1140.) For example, the courts have permitted allegations which obviously included conclusions of law and have termed them "ultimate facts" or "conclusions of fact." (See *Peninsula etc. Co.* v. *County of Santa Cruz*, 34 Cal.2d 626, 629 [213 P.2d 489] [one is the "owner" of property]; *Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 154 [157 P.2d 1] [act was "negligently" done]; *May* v.

---

[6]Subdivision 2 of section 35710 of the Health and Safety Code provides: "The term 'housing accommodation' includes any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings, but shall not include any accommodations operated by a religious, fraternal, or charitable association or corporation not organized or operated for private profit; provided, that such accommodations are being used in furtherance of the primary purpose or purposes for which the association or corporation was formed.

Subdivision 6, after defining multiple dwelling as indicated above, provides in part: "A 'multiple dwelling' shall not be deemed to include a hospital, convent, monastery, public institution, or a fireproof building used wholly for commercial purposes except for not more than one janitor's apartment and not more than one penthouse occupied by not more than two families. The term 'family' means either a person occupying a dwelling and maintaining a household, with not more than four boarders, roomers or lodgers, or two or more persons occupying a dwelling, living together and maintaining a common household, with not more than four boarders, roomers or lodgers.''

*Farrell,* 94 Cal.App. 703, 707 [271 P. 789] [employee was "acting within the scope of his employment"].) In permitting allegations to be made in general terms the courts have said that the particularity of pleading required depends upon the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff, and that less particularity is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff. (*Rannard* v. *Lockheed Aircraft, supra,* 26 Cal.2d 149, 154-157; *Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97, 101-102 [114 P.2d 1]; *May* v. *Farrell, supra,* 94 Cal.App. 703, 708.) In accordance with these principles it may be alleged generally, in the terms of the statute, that housing accommodations are "publicly assisted."

The purpose of the Hawkins Act is to prevent future discrimination in connection with the rental or sale of publicly assisted housing. It does not purport to penalize past conduct, and no problem of retroactivity is involved in its application to housing which began receiving public assistance prior to the effective date of the act. A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. (*United States* v. *Jacobs,* 306 U.S. 363 [59 S.Ct. 551, 83 L.Ed. 763].) Or, in other words, as said in *Lewis* v. *Fidelity & Deposit Co.,* 292 U.S. 559, 570-571 [54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794], a statute is not retroactive merely because it draws upon antecedent facts for its operation. (See also *Cox* v. *Hart,* 260 U.S. 427, 434-435 [43 S.Ct. 154, 67 L.Ed. 332].) Examples of the application of this principle in particular situations may be found in the following California cases: *People* v. *Union Oil Co.,* 48 Cal.2d 476, 480-481 [310 P.2d 409]; *Eichelberger* v. *City of Berkeley,* 46 Cal.2d 182, 189 [293 P.2d 1], and *Gregory* v. *State of California,* 32 Cal.2d 700, 702 [197 P.2d 728, 4 A.L.R.2d 924]. The Hawkins Act imposes sanctions upon conduct occurring after the effective date of the statute, and it does not operate retroactively merely because it may apply in some instances to housing which was receiving public assistance when the statute was enacted.

Defendants contend that the Hawkins Act contravenes the equal protection clauses of the federal and state Constitutions because it prohibits discrimination by owners of publicly assisted housing but not by owners of other hous-

ing. The constitutionality of such legislation has been upheld in New Jersey and New York. (*Levitt & Sons, Inc.* v. *Division Against Discrimination etc., Dept. of Education,* 31 N.J. 514 [158 A.2d 177, 186-187] [appeal dismissed for lack of federal question, 363 U.S. 418 (80 S.Ct. 1257, 4 L.Ed.2d 1515)]; *New York State Com.* v. *Pelham Hall Apts.* (Sup. Ct.) 10 Misc.2d 334 [170 N.Y.S.2d 750, 759-760].) We agree with the holdings of these cases that there is a reasonable basis for the classification and no denial of equal protection.

We are aware that similar legislation was held invalid by the Supreme Court of Washington in a five-to-four decision (*O'Meara* v. *Washington State Board Against Discrimination,* 58 Wn.2d 797 [365 P.2d 1]), but we do not find that case persuasive authority here. Three members of the majority took the position that the classification of "publicly assisted" housing was arbitrary and therefore unconstitutional. Their opinion dismissed the case of *New York State Com.* v. *Pelham Hall Apts.* (Sup. Ct.) 10 Misc.2d 334 [170 N.Y.S.2d 750], with the statement that since it was decided by a trial court the decision was not binding precedent. The case of *Levitt & Sons, Inc.* v. *Division Against Discrimination etc., Dept. of Education,* 31 N.J. 514 [158 A.2d 177], was cited, but there was no reference to the reasoning upon which the Supreme Court of New Jersey based its unanimous decision, nor to the fact that the appeal to the United States Supreme Court had been dismissed for want of a substantial federal question. The other two members of the majority based their concurrence partly upon procedural provisions of the Washington statute having no parallel in the Hawkins Act and partly upon violation of the constitutional provisions protecting the rights of property and privacy. The four dissenting justices, in a well-reasoned opinion written by Justice Rosellini, expressed views in accord with the *Levitt* and *Pelham Hall* cases.

 A statute need not operate uniformly with respect to persons or things which differ in relevant aspects, and a classification will be upheld where it has a substantial relation to a legitimate object to be accomplished. (*Morey* v. *Doud,* 354 U.S. 457, 463 [77 S.Ct. 1344, 1 L.Ed.2d 1485]; *Lelande* v. *Lowrey,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109].)

 When a legislative classification is questioned, if facts reasonably can be conceived that would sustain it, their existence is presumed, and the burden of showing arbitrary action rests upon the one who assails the classification. (*Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742, 760

[329 P.2d 689] ; *People* v. *Western Fruit Growers, Inc.,* 22 Cal.2d 494, 506-507 [140 P.2d 13] ; see *Blumenthal* v. *Board of Medical Examiners, ante,* pp. 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101].)

 Discrimination based upon race or color in housing provided by the state through its branches or agencies violates the Fourteenth Amendment (*Banks* v. *Housing Authority, supra,* 120 Cal.App.2d 1, 16 et seq.), and an extension of the prohibition to private housing receiving public assistance is a reasonable further step in the application of the policy against such conduct. The closer the connection of the discrimination with governmental activity, the more odious its character, and accordingly the Legislature could reasonably conclude that the problem of discrimination is more important in publicly assisted housing than in private housing which has no governmental assistance. Moreover, the primary purpose of the governmental assistance, namely, to raise the housing standards of the community, will be frustrated to a substantial extent if racial minorities, whose housing conditions are often substandard, are hampered in obtaining the full benefits of the assistance.

The judgment is reversed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.