Filed 5/21/21  Sloan v. Mother Lode Bank CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STEPHEN W. SLOAN,<br><br>Cross-complainant and Appellant,<br><br>v.<br><br>MOTHER LODE BANK et al.,<br><br>Cross-defendants and Respondents. | F079320<br><br>(Super. Ct. No. CV57470)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Rodarakis & Sousa, George P. Rodarakis and Brandy L. Barnes for Cross-complainant and Appellant.

Neumiller & Beardslee, Paul N. Balestracci, James T.C. Nuss and Melissa Bocanegra for Cross-defendants and Respondents.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Poochigian, J. and Peña, J.

This appeal was taken from a judgment of dismissal entered after an order sustaining a demurrer without leave to amend. The issue presented is how to properly plead a confidential relationship exists between a borrower and a lender and, therefore, the lender owes the borrower a fiduciary duty.

First, we conclude the existence of a confidential relationship between a borrower and a lender is not an "ultimate fact" for pleading purposes. Therefore, a general allegation that a confidential relationship existed is insufficient. Second, we conclude the borrower's allegations must set forth facts addressing three elements to properly plead the existence of a confidential relationship: (1) the borrower has reposed trust and confidence in the lender, (2) the lender is cognizant of this fact, and (3) the lender purports to act or advise with the borrower's interest in mind. As described below, the borrower's pleading did not adequately allege these elements and, therefore, the demurrer was properly sustained. The borrower, however, has carried his burden of demonstrating he could amend his pleading to cure the defects. As a result, we will remand and direct the trial court to grant the borrower leave to amend.

We therefore reverse the judgment of dismissal.

## FACTS

On February 4, 2005, Stephen W. Sloan executed a promissory note to Mother Lode Bank (Bank)[1] in the sum of $612,500 for a five-year term. The note was secured by Sloan's real property in Jamestown.

On July 24, 2009, Sloan executed another promissory note to Bank in the sum of $350,000, for a one-year term. The note was secured by a first deed of trust on Sloan's real property in Bear Valley.

When the first note became due on February 4, 2010, and Sloan could not pay, the parties agreed to an extension. Additional extensions were executed thereafter, the

---

[1] Oak Valley Community Bank is the successor in interest to Mother Lode Bank.

second of which required further security in the form of a second deed of trust on Sloan's real property in Bear Valley.  Similarly, when the second note became due, Sloan could not pay and Bank agreed to an extension if Sloan brought the interest current and paid certain fees.  Similar extensions were granted twice thereafter.

Subsequently, when payments were not made by Sloan in accordance with the terms of the extensions, Bank called the loans due.  When the loans were not paid, Bank commenced this litigation.

## PROCEEDINGS

In May 2012, Bank filed a complaint for foreclosure of deeds of trust and for deficiency judgment in Tuolumne County Superior Court.  Eight months later, Bank filed a motion for summary judgment.

In April 2013, while the summary judgment motion was pending, Sloan filed a cross-complaint against Bank, alleging causes of action for breach of contract, breach of confidential relationship, promise without intent to perform, unfair competition and declaratory relief.  These claims were based on Bank's allegedly improper and deceptive lending practices.  In May 2013, Bank answered the cross-complaint.

In August 2013, the trial court heard Bank's motion for summary judgment.  In October 2013, the court issued a ruling granting the motion.  In December 2013, the court signed an order granting Bank's motion for summary judgment and judgment ordering judicial foreclosure.  The order stated there was no substantial dispute of material facts regarding the loans and Sloan's obligation to repay them.  In particular, the order stated the evidence showed the loans were not paid after Bank called them due and Sloan's failure to pay the loans was a default entitling Bank to collect the debt by judicial foreclosure.  The order concluded that Bank was entitled to judgment as a matter of law.

Sloan unsuccessfully moved for a new trial and, in January 2014, filed a notice of appeal.  We assigned the appeal case No. F068840.  In July 2015, this court issued a 26-page opinion.  The opinion addressed Sloan's cross-complaint, stating in part:  "As we

3.

interpret this record, the trial court did not make any order or findings concerning the causes of action asserted in Sloan's cross-complaint. The judgment does not purport to dismiss or otherwise adjudicate the cross-complaint. References to the cross-complaint do not automatically turn the Bank's motion for summary judgment on its complaint into one that purports to decide the cross-complaint." (*Mother Lode Bank v. Stephen W. Sloan* (July 28, 2015, F068840) pp. 7–8, fn. omitted [nonpub. opn.].)

After remittitur was issued, the trial on the cross-complaint was scheduled to begin in November 2017. Prior to the trial date, Bank filed a motion for judgment on the pleadings. Bank's motion asserted Sloan's cross-complaint merely reasserted the claims raised in his affirmative defenses to Bank's complaint, which defenses had been rejected in the order granting Bank's motion for summary judgment. Bank's motion argued the trial court's prior ruling on the relevant affirmative defenses were res judicata on all causes of action in the cross-complaint.

The trial court granted Bank's motion for judgment on the pleadings and granted Sloan leave to file an amended cross-complaint. The order stated the court previously determined Sloan's affirmative defenses to Bank's complaint had no merit. The order concluded "that every cause of action in Sloan's Cross-Complaint fails to [allege] facts sufficient to state a cause of action as they are all based upon the previously rejected defenses which [Sloan] alleged in [his] answer to the original Complaint in the underlying action."

In January 2018, Sloan filed his first amended cross-complaint, the operative pleading for purposes of this appeal (cross-complaint). The cross-complaint included causes of action labeled (1) fraudulent concealment, (2) constructive fraud, (3) intentional misrepresentation, (4) negligent misrepresentation, (5) breach of confidential relationship, (6) unfair competition, and (7) usury. Paragraph 62 of the cross-complaint alleged:

4.

"A confidential relationship existed between Sloan and [Bank]. [Bank] extended two loans and seven corresponding short term extensions to those loans to Sloan, in conduct that was unprecedented and unlike any ordinary borrower-lender relationship. Throughout this unprecedented conduct by [Bank], [Bank] directed all of its communications with Sloan, through Sloan's long-time trusted banker, Lisa Melville, such that Sloan spoke exclusively with Melville. That Sloan's communications with [Bank] were exclusively through Melville, provided an additional sense of trust and security for Sloan. [Bank] was fully aware of Sloan's trust and confidence in Melville and systematically fostered and encouraged that relationship for its own gain."

The next paragraph of the cross-complaint alleged Bank breached the confidential relationship by failing to inform Sloan that a particular loan and all seven extensions of the loans were considered by Bank to be undercollateralized and were considered " 'substandard,' " a status that prompted the internal need for additional analysis and the approval of Bank's loan committee. The cross-complaint also alleged Bank breached the confidential relationship by failing to inform Sloan that, as time passed with each extension, the collateral continued to decline in value and that Bank's chief credit officer had recommended against approving at least one extension.

In March 2018, Bank filed a demurrer to the cross-complaint. Bank supported its demurrer with a request for judicial notice of its motion for summary judgment, the order granting the motion and this court's opinion affirming the summary judgment. Bank argued (1) the judgment on its complaint effectively barred Sloan's causes of action, (2) the allegations did not show an agent of Bank had made an affirmative representation to Sloan, (3) Bank owed no duty to disclose information to Sloan, and (4) the lender-borrower relationship was not a confidential or fiduciary relationship as a matter of law.

In October 2018, the trial court filed its order on Bank's demurrer to Sloan's cross-complaint. The ruling noted Sloan's opposition to the demurrer argued facts not actually pleaded in his cross-complaint:

"Sloan argues that, 'the bank further represented that it was a good financial decision for Mr. Sloan to extend the loans in order to pursue other

transactions and investments, citing to the [cross-complaint] ¶¶ 29, 30, 49-53, 56-59. None of those facts appear in the paragraphs cited. Sloan refers to the Bank employees as 'his advisers,' but there are not facts alleged that the Bank gave Sloan any advice. Sloan alleges that Melville and the Bank 'gave advice concerning, and exercised control of Mr. Sloan's financial matters, including those transactions entirely unrelated to his business with the Bank. None of these factual allegations appear in the [cross-complaint].

"All of Sloan's allegations of misrepresentation and failure to disclose relate to the Bank's internal policies and are designed for the protection of the Bank, not the borrower. Absent a fiduciary or confidential relationship between the Bank and Sloan, which the Court finds to be the case here, they do not give rise to a cause of action against the Bank."

The court concluded Sloan's claims merely restated the affirmative defenses pleaded in his answer to Bank's complaint and those defenses were determined to have no merit in the court's ruling on Bank's motion for summary judgment. The court also stated the seven causes of action in the cross-complaint did not state facts sufficient to constitute a cause of action. Based on the foregoing rationale, the court sustained Bank's demurrer without leave to amend.

On March 6, 2019, the trial court filed a judgment of dismissal of Sloan's cross-complaint to implement its order sustaining the demurrer without leave to amend. On March 22, 2019, Bank served a notice of entry of the judgment of dismissal. In May 2019, Sloan filed a timely notice of appeal from the judgment of dismissal.

In January 2020, after receipt of appellant's opening brief and respondent's brief, this court sent the parties a letter of briefing instructions directing Sloan's reply brief to (1) address four specific questions related to pleading a fiduciary or confidential relationship and (2) include a section containing the additional allegations he proposed setting forth in an amended pleading should he be granted leave to amend. Our letter allowed Bank, at its option, to file a sur-reply brief addressing the letter's questions and whether the additional allegations proposed by Sloan were sufficient to plead the existence of a confidential relationship. Sloan's reply brief complied with our instructions and Bank filed a sur-reply brief.

6.

**DISCUSSION**

I.  LEGAL PRINCIPLES

    A.  Pleading a Cause of Action

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10.)[2]  This fact-pleading requirement obligates the plaintiff to allege *ultimate* facts that, as a whole, apprise the defendant of the factual basis of the claim.  (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal. App. 4th 409, 415.)  Stated another way, the "complaint must allege the ultimate facts necessary to the statement of an actionable claim."  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390.)

The particular facts that must be stated to properly plead a cause of action are referred to as the essential elements of the cause of action.  The essential elements are determined by the substantive law that defines the cause of action.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:121, p. 6–36.)

For purposes of California pleading, the words set forth in a complaint can be divided among three categories—legal conclusions, ultimate facts and evidentiary facts. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 6:124–6:125, pp. 6–38 to 6–39.)  Legal conclusions are objectionable because they are too general.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 6:124, p. 6–38.)  Evidentiary facts are objectionable because they provide unnecessary detail.  (*Ibid*.)  "Lawyers and judges have struggled with these distinctions."  (*Ibid*.)

Similarly, our Supreme Court has recognized that "[t]he distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree."  (*Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 473 (*Burks*).)  The court listed examples of what it described as obvious conclusions of law that are termed

---

[2]     Unlabeled statutory references are to the Code of Civil Procedure.

7.

" 'ultimate facts' " for pleading purposes:  "(See *Peninsula etc. Co. v. County of Santa Cruz*, 34 Cal.2d 626, 629 [ ] [one is the 'owner' of property]; *Rannard v. Lockheed Aircraft Corp.*, 26 Cal.2d 149, 154 [ ] [act was 'negligently' done]; *May v. Farrell*, 94 Cal.App. 703, 707 [ ] [employee was 'acting within the scope of his employment'].)" (*Burks*, at pp. 473–474.)

The rationale for the flexibility or uncertainty in the terms "ultimate fact" and "legal conclusion" is that "the particularity of pleading required depends upon the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff."  (*Burks*, *supra*, 57 Cal.2d at p. 474.)  Less particularity is needed in situations where the defendant possesses knowledge of the facts equal or superior to the knowledge possessed by the plaintiff.  (*Ibid.*; see *Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exhange* (2005) 132 Cal.App.4th 1076, 1098–1099.)

### B.    General Demurrers

When a complaint "does not state facts sufficient to constitute a cause of action," a defendant may raise that objection by filing a demurrer.  (§ 430.10, subd. (e).)  Whether a pleading alleges facts sufficient to constitute a cause of action is a question of law. (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.)

### C.    Standard of Review

#### 1.    Demurrer

When a general demurrer is sustained and a judgment of dismissal entered, the appellate court conducts an independent review to determine whether the pleading "alleges facts sufficient to state a cause of action under any legal theory."  (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415; see § 430.10, subd. (e).)  "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts

8.

properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) We also consider matters which may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### 2. *Leave to Amend*

Whether a plaintiff should be given leave to amend is subject to appellate review under a different standard—the abuse of discretion standard. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

Subdivision (a) of section 472c provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is *open on appeal* even though no request to amend such pleading was made." (Italics added.) Our Supreme Court has interpreted this provision to mean the "issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

In view of the principle that leave to amend is always open on appeal, our letter of briefing instructions directed Sloan "to include a section in his appellant's reply brief that contains the additional allegations he is proposing to include in an amended pleading." We advised appellant that it was unlikely the court would consider allegations omitted from his reply brief and described for the first time at oral argument.

II.     CONFIDENTIAL RELATIONSHIP BETWEEN SLOAN AND BANK

      A.      Fiduciary and Confidential Relationships

The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) the breach of a fiduciary duty arising from that relationship, and (3) damages proximately caused by that breach.  (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 432; see *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  To be charged with a fiduciary duty, a person must knowingly undertake to act on behalf and for the benefit of another or, alternatively, must enter into a relationship which imposes that undertaking as a matter of law.  (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 140 (*Hasso*).)

The latter type of fiduciary duty arises in relationships such as those between partners, trustees and beneficiaries, principals and agents, and attorneys and clients.  (*Hasso*, *supra*, 227 Cal.App.4th at p. 140.)  Here, the relationship between Sloan and Bank was that of a borrower and lender.  Generally, the relationship between a debtor and creditor or a borrower and lender is not a fiduciary relationship.  (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)  Therefore, for a fiduciary relationship to exist between Sloan and Bank, it must be based on something more than the existence of a borrower-lender relationship.  (See *Hasso*, at p. 140.)

Paragraph 62 of the cross-complaint asserted a "confidential relationship existed between Sloan and [Bank]."  The existence of this confidential relationship is the basis for Sloan's claim that Bank owes him a fiduciary duty.  Accordingly, our discussion turns to the legal principles that define confidential relationships and the duties attached to such a relationship.

A fiduciary duty under common law may arise when one person enters into a confidential relationship with another.  (*Gab Bus. Servs. v. Lindsey & Newsom Claim Servs.* (2000) 83 Cal.App.4th 409, 417.)  It is a question of fact whether one is a party to a confidential relationship that creates a fiduciary duty under common law.  (*Ibid*.)  Our

Supreme Court discussed the circumstances that give rise to a confidential relationship in *Vai v. Bank of America* (1961) 56 Cal.2d 329 (*Vai*). The court distinguished a fiduciary relationship arising by law from a confidential relationship created by the parties and quoted the Restatement Second of Trusts:

> " 'A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relation may exist although there is no fiduciary relation [imposed by law]; it is particularly likely to exist where there is a family relationship or one of friendship or such a relation of confidence as that which arises between physician and patient or priest and penitent.' (Rest., Trusts 2d, § 2, comment b.)" (*Vai*, *supra*, 56 Cal.2d at pp. 337–338.)

Accordingly, a confidential relationship and the resulting fiduciary duty is "dependent upon the existence of confidence and trust." (*Vai*, *supra*, 56 Cal.2d at p. 338.) Stated in more detail, "[t]he prerequisite of a confidential relationship is the reposing of trust and confidence by one person in another who is cognizant of this fact." (*Ibid*.)

### B. Pleading the Existence of a Confidential Relationship

#### 1. Contentions

Because the first round of appellate briefs did not explicitly address the question, our letter of briefing instructions asked: "Is the existence of a *confidential relationship* between appellant and respondent an 'ultimate fact' or a 'conclusion of law' for purposes of California pleading?" Sloan answered it was an ultimate fact for purposes of California pleading and cited two cases as support. (See *Twomey v. Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 707; *Phillis v. City of Santa Barbara* (1964) 229 Cal.App.2d 45, 56, fn. 5.) Bank's sur-reply brief stated: "3. Whether a Confidential Relationship Exists Between a Lender and a Borrower is an Ultimate Fact." (Boldface omitted.) After discussing various cases, the sur-reply brief concluded: "Accordingly, if

11.

there can ever be a confidential relationship between a lender and borrower, it will most likely be an ultimate fact."

In view of the principle that one need plead only ultimate facts, Bank's response could be interpreted as a concession that a confidential relationship can be properly pleaded under California law with a general allegation—that is, a simple statement that a confidential relationship existed between the plaintiff and the defendant.  (Cf. *Skopp v. Weaver* (1976) 16 Cal.3d 432, 437–438 [the existence of a principal-agent relationship is an ultimate fact that may be pleaded with a general allegation; allegation that defendants acted " '*as agents for the plaintiffs*' " was sufficient to survive a demurrer].)  We reject such an interpretation.  Based on our reading of the entirety of Bank's sur-reply brief, it is not reasonable to infer Bank intended to concede Sloan's allegation that a "confidential relationship existed between Sloan and [Bank]" was sufficient to plead such a relationship.

### 2. *Detail Required*

For purposes of pleading, we conclude the statement that a confidential relationship exists between a borrower and lender should be treated as a conclusion of law, rather than an ultimate fact.  On balance, (1) it is fair for defendant lenders to be informed of some details about the confidential relationship allegedly created and (2) the plaintiff borrower would have ready access to the details of how the relationship was formed.  (See *Burks*, *supra*, 57 Cal.2d at p. 474.)  Consequently, the existence of a confidential relationship in the specific context of a borrower and lender cannot be pleaded simply by stating a confidential relationship existed between the plaintiff borrower and the defendant lender.

Applying the foregoing conclusion to the allegations in Sloan's cross-complaint, we conclude the statement in its paragraph 62 that a "confidential relationship existed between Sloan and [Bank]" did not properly plead the existence of such a relationship.

12.

Therefore, our next step is to consider whether the other allegations in the cross-complaint provided sufficient factual detail.

Resolving that question requires a determination of what details must be set forth in the pleading to properly allege the existence of a confidential relationship. We resolve that question by relying on the description of confidential relationships provided by our Supreme Court in *Vai*, *supra*, 56 Cal.2d 329. (See pt. II.A., *ante*.) That description identifies three elements. A confidential relationship is created if (1) the borrower has reposed trust and confidence in the lender, (2) the lender is cognizant of this fact, and (3) the lender purports to act or advise with the borrower's interest in mind. (*Vai*, at pp. 337–338.) Allegations of fact addressing each of these elements must be set forth to properly allege a confidential relationship exists between the borrower and the lender.

Having identified these elements, we turn to the statement included in Sloan's fifth cause of action, breach of confidential relationship. Sloan asserted Bank's conduct in making loans and granting short-term extensions "was unprecedented and unlike any ordinary borrower-lender relationship." While the loans and extensions may have been the action taken by Bank that purportedly had Sloan's interests in mind, we conclude that labeling those actions unprecedented or out of the ordinary does not add information needed to satisfy any of the three elements. In contrast, the allegation that Bank "directed all of its communications with Sloan, through Sloan's long-time trusted banker, Lisa Melville," addresses the first element by identifying the person in whom Sloan placed his trust and confidence. Accordingly, we conclude this allegation was sufficient to fulfill the first element needed to properly allege the existence of a confidential relationship.

Sloan addressed the second element, the lender's awareness of the trust or confidence being placed in it, by alleging Bank "was fully aware of Sloan's trust and confidence in Melville and systematically fostered and encouraged that relationship for its own gain." We conclude this allegation adequately fulfills the second element for pleading the existence of a confidential relationship.

13.

The third element requires Sloan to allege facts showing Bank purported to act or advise him with his interests in mind. We conclude the statement that Bank "systematically fostered and encouraged" the relationship of trust and confidence in Melville is insufficient to allege the Bank purported to act or advise Sloan *with his interests in mind*. Accordingly, we conclude the cross-complaint did not adequately plead the existence of a confidential relationship between Sloan and Bank.

### 3.    Leave to Amend

Having concluded Sloan's cross-complaint was deficient, the next question is whether Sloan has carried his burden of demonstrating a reasonable possibility he could cure the defect if given leave to amend. To resolve this question, we turn to the 25 enumerated allegations proposed in Sloan's appellant's reply brief.

The additional allegations described by Sloan stated he placed his trust and confidence in Melville, he relied on her advice regarding his loans with Bank, and he considered her to be an extension of himself and to be acting on his behalf and in his best interest. Sloan also stated:

> "8.  Ms. Melville purported to accept Mr. Sloan's confidence and to act in his best interest in advising him and taking steps to advance his financial transactions even though they were not part of Mr. Sloan's business with the Bank.

> "9.  Indeed, Mr. Sloan trusted Ms. Melville with substantial, confidential information regarding his business and finances, including his business and financial matters that were outside of the context of Mr. Sloan's loans with the Bank."

The steps referred to in paragraph 8 included the extension of the maturity date of Sloan's loans with Bank, his payments to Bank, and his providing additional collateral for the loans. We conclude the foregoing allegations in appellant's reply brief are sufficient to satisfy the third essential element of a confidential relationship. Therefore, Sloan has demonstrated that, if given leave to amend his cross-complaint, he will be able

14.

to cure the defects and adequately allege all three elements necessary for the existence of a confidential relationship between a borrower and lender.[3]  As a result, the matter will be remanded with directions to grant him leave to amend.

C.  Issues Previously Resolved

Bank contends the trial court correctly sustained the demurrer on the ground the judgment entered on Bank's complaint resolved all the issues raised by Sloan's cross-complaint, which parroted the previously adjudicated affirmative defenses.  We disagree.

We have reviewed the 33 affirmative defenses set forth in Sloan's answer to Bank's complaint.  None assert the existence of a fiduciary duty or a confidential relationship.  Therefore, Sloan's cause of action for breach of a fiduciary duty arising from a confidential relationship cannot be characterized as parroting an affirmative defense.

Restated from another perspective, the elements for claim preclusion (the primary aspect of the doctrine of res judicata) are:  " '(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.' [Citations.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 253; see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  The issues raised by Sloan's cause of action for breach of a fiduciary duty arising from a confidential relationship are not identical to issues litigated in the summary judgment proceeding that resulted in a final judgment in favor of Bank.  Thus, the elements of claim preclusion do not exist in this case and the

---

**3**    The level of detail we deem is necessary is not as extensive as the factual detail required to properly plead a cause of action for fraud or negligent misrepresentation.  Those causes of action must be pleaded with particularity—that is, the pleading must set forth how, when, where, to whom, and by what means the representations were made. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

judgment on Bank's complaint does not preclude Sloan from pursuing his cause of action.

The parties are familiar with our 2015 opinion affirming the summary judgment. Consequently, we need not repeat everything we said about Sloan's affirmative defenses in that opinion. It is enough to repeat our conclusion that "the trial court did not make any order or findings concerning the causes of action asserted in Sloan's cross-complaint. The judgment does not purport to dismiss or otherwise adjudicate the cross-complaint." In our review of the record and briefing, we have uncovered no reason to doubt the interpretation of the prior proceedings expressed in our 2015 conclusion.

Consequently, we conclude the resolution of the affirmative defenses in the summary judgment proceedings and our affirmance of that judgment does not prevent Sloan from pleading (1) the existence of a confidential relationship that gave rise to a fiduciary duty and (2) breaches of that fiduciary duty.

The terms "collateral estoppel" and "issue preclusion" are interchangeable. (See Heiser, *California's Confusing Collateral Estoppel (Issue Preclusion) Doctrine* (1998) 35 San Diego L.Rev. 509, fn. 1.) This opinion should not be interpreted as implying a view on the application of that doctrine in subsequent proceedings. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [doctrine "precludes relitigation of issues argued and decided in prior proceedings"].)

## DISPOSITION

The judgment of dismissal is reversed. The trial court is directed to vacate its order sustaining the demurrer without leave to amend and to enter a new order sustaining the demurrer with leave to amend. Pursuant to California Rules of Court, rule 8.278(a)(5), the parties shall bear their own costs on appeal.